Argued and submitted January 12, decision of the Court of Appeals reversed; judgment of the circuit court vacated; and case remanded to the circuit court with instructions April 6, 1995

# A. J. DAVIS,
by and through
Lorie Davis-Toepfer,
Special Conservator,
*Petitioner on Review,*

*v.*

# Steven O'BRIEN
and Nancy O'Brien,
doing business under the assumed name
"O'Brien & Sons Logging,"
*Respondents on Review.*

(CC 911478; CA A79007; SC S41621)

891 P2d 1307

Edward J. Harri, Salem, argued the cause for petitioner on review. With him on the brief was Michael B. Brink, of Weatherford, Thompson, Quick & Ashenfelter, P.C., Albany.

Joel S. DeVore, of Luvaas, Cobb, Richards & Fraser, P.C., Eugene, argued the cause and filed the brief for respondents on review.

Kathryn H. Clarke, Portland, appeared and filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

VAN HOOMISSEN, J.,

## VAN HOOMISSEN, J.

At issue in this case is whether the trial court erred in the manner in which it entered judgment on the jury's verdict for plaintiff. The special verdict assigned 96.5 percent of the fault for plaintiff's injuries to a non-party and 3.5 percent to defendants O'Brien (hereinafter O'Brien). The trial court reduced plaintiff's damages recoverable from O'Brien to 3.5 percent of plaintiff's total damages, in the light of the jury's allocation of proportionate fault, and entered judgment accordingly. On appeal, the Court of Appeals affirmed, holding that "plaintiff has failed to preserve or assign as error the predicates for the jury's determination of proportionate fault under ORS 18.480." *Davis v. O'Brien*, 128 Or App 428, 431, 875 P2d 1193 (1994). For the reasons that follow, we reverse.

In 1989, plaintiff and his sister, Tiara Toepfer, were passengers in a car driven by their grandmother, Eunice Holt, when their car collided with O'Brien's log truck. Holt was killed in the accident. Before filing this action, plaintiff settled with Holt's estate for $100,000.

Plaintiff and his sister, Tiara, filed a complaint against both Holt's estate and O'Brien alleging negligence. Because plaintiff already had settled with the Holt estate, his only claim was against O'Brien. Tiara's claim was against both the Holt estate and O'Brien. Before trial, Tiara settled with the Holt estate and O'Brien, and the trial court entered a judgment of dismissal as to Tiara. Plaintiff then filed an amended complaint, naming only O'Brien, who responded with an affirmative defense that plaintiff's injuries were caused by Holt's negligence.

Before trial, plaintiff moved *in limine* to exclude evidence of Holt's fault and of his settlement with Holt's estate, arguing that the comparative fault statutes, ORS 18.470-.485,[1] allow the jury to assess only the relative fault of

---

[1] ORS 18.470 provides:

"Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense."

*parties before the court.* Plaintiff relied on this court's decision in *Mills v. Brown*, 303 Or 223, 735 P2d 603 (1987). A degree of uncertainty was added to the argument by the question whether a 1987 legislative amendment to ORS 18.485 had changed the rule of law stated in *Mills*.

The trial court stated:

"I'm still satisfied that somehow, at least for the purposes of economic damages, there must be a determination by the jury that the defendant did or did not — was or was not is probably the better word, 15 percent at fault in order to allocate the economic damages.

"* * * * *

"This Court rules that, as I've said a moment ago, for the purposes of economic damages, the trier of fact must determine whether or not this defendant is at least 15 percent at fault or not.

"This Court further holds that the question to be put to the jury on economic damages is what are — what are the full amount, and if that criterion of 15 percent is met, then he's severally liable for that.

"* * * * *

---

ORS 18.480 provides:

"(1) When requested by any party the trier of fact shall answer special questions indicating:

"(a) The amount of damages to which a party seeking recovery would be entitled, assuming that party not to be at fault;

"(b) The degree of each party's fault expressed as a percentage of the total fault attributable to all parties represented in the action.

"(2) A jury shall be informed of the legal effect of its answer to the questions listed in subsection (1) of this section."

ORS 18.485 provides in part:

"(2) In any civil action arising out of bodily injury, death or property damage, including claims for emotional injury or distress, loss of care, comfort, companionship and society, and loss of consortium, the liability of each defendant for noneconomic damages awarded to plaintiff shall be several only and shall not be joint.

"(3) The liability of a defendant who is found to be less than 15 percent at fault for the economic damages awarded the plaintiff shall be several only.

"(4) The liability of a defendant who is found to be at least 15 percent at fault for the economic damages awarded the plaintiff shall be joint and several, except that a defendant whose percentage of fault is less than that allocated to the plaintiff is liable to the plaintiff only for that percentage of the recoverable economic damages."

"As to noneconomic damages, as I understand the law, there is joint and several liability. So this defendant may very well be responsible for the full amount with no 15 percent consideration.

"Given those rulings, certainly evidence about the fault of both Mrs. Holt and the driver defendant * * * The fault of those two people's going to have to be talked about."

The trial court and counsel then discussed what to tell the jury about plaintiff's settlement with the Holt estate, and what the appropriate form of verdict would be. When the court stated that the jury would be asked whether Holt was negligent in any respect, plaintiff's counsel objected, stating:

"Now I've got to defend the settling party. There's nobody at trial who's going to be defending that conduct. So as a practical matter to litigants, if this becomes the law statewide, we're all going to have to have settlement agreements that require the settling defendant to stay at trial and defend themselves."

The trial court replied:

"Could be. I can't account for the consequences of what I understand to be the law. You've heard my ruling."

During trial, O'Brien's evidence focused on Holt's fault in causing the accident.

The trial court instructed the jury:

"I instruct you that the parties in this case have stipulated or agreed that the plaintiff, A. J. Davis, bears no fault or negligence, if you will. * * *

"There are two other matters with regard to negligence, or not with regard to it, however you look at it. In this case, if you determine that the plaintiff is entitled to a verdict, you must apportion the percentage of negligence or fault between the drivers of the two vehicles.

"Also in this case, a settlement has occurred between the plaintiff and the estate of Eunice Holt, deceased. You are not to infer from the settlement that the defendants, Steven and Nancy O'Brien, doing business as O'Brien Logging, are or are not liable to plaintiff. I further instruct you that if the ver — your verdict is for the plaintiff, and in accordance with the other instructions I have and will give you, and if you find that plaintiff has been damaged, you are to return a verdict for the full amount of plaintiff's damages. Do not reduce the

amount of the plaintiff's damages, if any, by reason of the settlement, or by reason of the percentage of negligence on either of the drivers.

"In order to be a cause of injury, an act or omission must be a substantial factor in producing the injury. A substantial factor is an important or material factor, and not one that is insignificant. Many factors or things may operate either independently or together to cause injury. In such a case, each may be the cause of injury, even though the others would have been sufficient of themselves to cause the same injury. You need not find the conduct of either driver was the only cause of the injury."

The jury returned the following special verdict:

"We the jury, find:

"1.   Were defendants, Steven and Nancy O'Brien, doing business as O'Brien & Sons Logging, negligent in one or more of the ways alleged in Plaintiff's complaint, and, if so, was such negligence a cause of damage to Plaintiff?

"ANSWER:  <u>Yes</u>   (Yes or No)

"If your answer to question 1 is 'no.' your verdict is for the defendants. Your presiding juror should sign this verdict form. Do not answer any more questions. If your answer to question 1 is 'yes,' proceed to question 2.

"2.   Was Eunice Holt, the driver of the vehicle in which Plaintiff was a passenger, negligent in one or more of the ways alleged in Defendants' answer, and if so, was such negligence a cause of damage to Plaintiff?

"ANSWER:  <u>Yes</u>   (Yes or No)

"At least nine of you who answered yes to question 1 must also agree on the answer to question 2 if the answer to question 2 is 'yes'; however, the same nine need not agree on both answers if question 2 is answered 'no.'

"If your answer to question 2 is 'no,' proceed to question 4. Do not answer question 3.

"If your answer to question 2 is 'yes,' proceed to question 3.

"3.   What is the percentage of negligence which caused damage to Plaintiff?

"ANSWER:   Defendants                    <u>3 1/2</u> %

                                                         <u>96 1/2</u> %

"(The percentages must total 100%)

"At least the same nine of you who agreed on the answer to questions 1 and 2 must also agree on the answer to question 3.

"4.   What are Plaintiff's damages?

"ANSWER:   Economic Damages:      $ 69,175.00

125,000.00

"Do not reduce the damages by reason of the prior settlement or by reason of the percentage of negligence of the drivers because the court will do this when entering judgment."

O'Brien submitted a proposed form of judgment that allowed plaintiff recovery of 3.5 percent of the total damages awarded. Plaintiff submitted an alternative form of judgment that would have reduced the damages found by the jury by the amount of the Holt settlement, allowing plaintiff to recover $94,175 from O'Brien. The trial court accepted O'Brien's form of proposed judgment and rejected plaintiff's form. Over plaintiff's objection to the form of judgment submitted by O'Brien, the trial court entered judgment for plaintiff in the sum of $6,794.38[2] plus costs and disbursements.

On appeal, plaintiff assigned as error the trial court's entry of "judgment comparing the fault of O'Brien with a non-party (Holt estate) rather than with Plaintiff A. J. Davis." The Court of Appeals affirmed, stating:

"We emphasize what this assignment does *not* do. It does not challenge the trial court's denial of plaintiff's motion *in limine* pertaining to defendants' presentation of evidence of Holt's fault and defendants' 'proportionate fault' jury arguments based on that evidence. Nor does the assignment challenge the legal sufficiency or propriety of: (1) the instructions directing the jury to fix both Holt's and defendants' percentages of fault; or (2) the verdict form to the same effect. In sum, plaintiff has failed to preserve or assign as error the predicates for the jury's determination of proportionate fault under ORS 18.480.

"Plaintiff's assignment of error at most challenges the trial court's entry of defendants' proposed form of judgment and its failure to enter either of plaintiff's proposed forms of

---

[2] Although $6,794.38 is not exactly 3.5 percent of $194,175, no issue has been raised concerning this discrepancy.

judgment. This, in turn, reduces to an argument that notwithstanding the jury's apportionment of defendants' fault under ORS 18.480 — an apportionment plaintiff does not challenge on appeal — the trial court was somehow obliged to enter a judgment at variance with that apportionment.

"Plaintiff's argument smacks of barring the door after the horse has bolted. Having failed to object and assign error to the jury's consideration of Holt's fault in determining defendant's proportionate fault under ORS 18.480, plaintiff cannot now assert that the trial court should have disregarded that determination in entering judgment." *Davis*, 128 Or App at 431-32 (emphasis in original; footnotes omitted).

Plaintiff petitioned this court for review, arguing that his assignment of error was sufficiently raised and preserved in the trial court, and briefed in the Court of Appeals, and urging this court to reach the substantive issue regarding apportionment of fault. O'Brien responded that, because plaintiff failed to assign as error the trial court's ruling on the motion *in limine* and had acquiesced in the instruction of the jury and the use of the special verdict form requiring the jury to apportion fault between O'Brien and Holt, any error was not preserved. O'Brien also argued that a 1987 amendment of ORS 18.485 permitted the jury to consider Holt's fault in making its determination.

## PRESERVATION OF ERROR

■        Before oral argument, this court asked the parties to address the following question:

"Discuss whether plaintiff's motion *in limine*, objection to the proposed form of judgment, submission of alternative forms of judgment, or any other procedural action, singly or in combination, preserved in the trial court a claim of error regarding the legal issue of comparative fault that was argued to the Court of Appeals. *See State v. Hitz*, 307 Or 183, 766 P2d 373 (1988) (explaining requirements and rationales for preservation of error); *State v. Olmstead*, 310 Or 455, 459-61, 800 P2d 277 (1990) (relating to preservation of error when a pretrial ruling excludes an entire class of evidence as a matter of law); *State v. Foster*, 296 Or 174, 674 P2d 587 (1983) (relating to repetition of a motion *in limine* at trial)."[3]

---

[3] Plaintiff did not assign as error on appeal the trial court's ruling on the motion

Plaintiff responded that the issue of comparative fault was thoroughly briefed and argued in the trial court in the motion *in limine* and that plaintiff's arguments at that time, as well as plaintiff's submission of an alternative form of judgment and his objection to entry of the judgment form submitted by O'Brien, adequately preserved the issue in the trial court. O'Brien responded that raising the issue in the motion *in limine* was insufficient to preserve any later error in the verdict form or in the entry of the judgment, as distinct from preserving evidentiary error. O'Brien argues that plaintiff was required to object to the trial court's instructions to the jury and to the form of the verdict that memorialized the trial court's pre-trial ruling on plaintiff's motion *in limine* in order to preserve the issue respecting the form of judgment.

No claim of error was preserved in the trial court as to the trial court's instructions to the jury[4] or as to the form of the verdict.[5] In addition, plaintiff's assignment of error on appeal does not challenge the jury instructions or the form of the verdict. Rather, plaintiff's assignment challenges the form of the judgment, an issue that plaintiff raised at trial by proposing an alternative form of judgment. It is only the trial court's choice between the alternative forms of judgment that plaintiff assigned as error on appeal.

This court has indicated that the rules pertaining to preservation of error in trial courts are intended to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument. *See generally Hitz*, 307 Or at 188 (so noting). In this case, there was no lack of clarity with respect to the issue presented to the trial court by plaintiff's motion *in limine*. The issue was squarely presented to the trial court, and

---

*in limine*. We are not called upon to consider whether plaintiff was required to object to the jury instructions, form of verdict, or form of judgment in order to preserve and raise a claim that the ruling on the motion *in limine* was error requiring reversal on appeal. *See generally Hitz*, 307 Or at 188-89 (preservation of error); *Foster*, 296 Or at 183-84 (motion *in limine*).

[4] *See* ORCP 59 (regarding preservation of claims of error in jury instructions).

[5] *See State ex rel Sam's Texaco & Towing v. Gallagher*, 314 Or 652, 662, 842 P2d 383 (1992) (regarding preservation of claims of error on the form of the verdict).

O'Brien had ample opportunity to meet plaintiff's argument. Indeed, O'Brien does not argue lack of clarity, and the Court of Appeals did not hold that there was a lack of clarity. O'Brien argued only, and the Court of Appeals agreed, that a clearly presented issue was waived later by the inaction of plaintiff's counsel at critical junctures.

The specific question to be addressed is: If a party raises a substantive issue by motion before trial, but does not raise the issue again when the court instructs the jury and submits the special verdict form, does that conduct waive that party's argument on the issue, or may the party raise the issue again when it comes time to enter the judgment?

O'Brien argues that plaintiff waived the right to claim error by acquiescing in the trial court's ruling on plaintiff's motion *in limine* and by promoting consideration of Holt's fault during trial. O'Brien relies on *Ingram v. Allen*, 273 Or 890, 544 P2d 167 (1975), for the proposition that acquiescence waives any argument about error. In *Ingram*, the plaintiff made no objection to a trial court's failure to instruct a jury and made no objection to the form of the special verdict submitted to that jury. Because plaintiff made no objection on those points, this court refused to consider his assignments of error based on those points. 270 Or at 893. By contrast, here there was an *earlier* objection, the logic of which carried through all the way to the judgment.

Plaintiff's motion *in limine* sought to exclude *all* evidence "comparing or contrasting the fault of non-parties, with that of any party or parties, in terms of percentage or proportion." Arguably, that could have prevented O'Brien from contending that they were not at fault at all, because Holt caused the accident (the so-called "empty chair" defense). The trial court asked plaintiff's counsel if he was proposing "to take Mrs. Holt's car out of this? This child standing on the road?" Counsel responded that he was not and that the jury should be told that the present case was about O'Brien's truck, not Holt's car, and that it is the function of the court to prevent double recovery. In the course of that discussion, the court ruled on what the jury would be told and what it would be asked. Thus, the subjects of jury instructions and verdict form were not separate from the question raised in the motion *in limine* about comparative

fault. Plaintiff's counsel made it clear in that discussion what he thought was wrong with the court's conclusions on those points. Later, counsel did help to draft the jury instructions and verdict form, but only in compliance with those rulings.[6] Plaintiff's failure to object to the jury instructions and to the verdict form did not operate as a waiver in this unusual case, because plaintiff's ability to object to the judgment was not dependent on an earlier objection to the jury instructions or to the verdict form.[7] As this particular case was tried, the jury made all the findings that needed to be made on both parties' theories, and the trial judge had been made aware of those theories at the beginning of the trial. Under the circumstances, the trial court logically could have chosen to use plaintiff's or defendant's verdict form. This scenario does not show a waiver by plaintiff of his objection to the form of the judgment.

## COMPARATIVE FAULT STATUTES

■    In *Mills*, 303 Or at 225, this court addressed the issue of whether Oregon's comparative fault statutes, ORS 18.470 and 18.480, require that the factfinder consider the fault of persons not in the case when making the comparative fault determination. This court stated:

> "We interpret that statute as addressing itself only to those persons against whom recovery is sought when the case is submitted to the trier of fact for comparison of fault. The statutory scheme of comparative fault restricts the jury or judge, as the fact-finder, to consideration only of the fault of the parties before the court at the time the case is submitted to the fact-finder for a verdict or decision.
>
> "ORS 18.470 was first adopted by the Oregon legislature in 1971. Or Laws 1971, ch 668, § 1. At that time, the statute required a comparison of the plaintiff's fault to the fault of the 'person against whom recovery is sought.' Although the

---

[6] Preservation rules generally require that a point be raised earlier rather than later. *See, e.g.*, OEC 103(1)(a); *McEwen v. Ortho Pharmaceutical*, 270 Or 375, 421, 528 P2d 522 (1974) ("[A] motion to strike improper testimony must be made as soon as the ground for such a motion is disclosed"). Here, this concern has been satisfied by the raising and resolution of the issue *in limine*.

[7] This outcome differs from what would be required to assign error to a ruling on a motion for a judgment notwithstanding a verdict. That motion must be preceded by a timely motion for a directed verdict. ORCP 63 A.

legislature failed to define 'the person against whom recovery is sought,' there is nothing in the legislative history of the original ORS 18.470 (HB 1343) that would suggest any intent on the part of the legislature to have the trier of fact compare the fault of any persons other than the plaintiff and the person against whom the plaintiff sought recovery in court.

"In 1975, the legislature enacted ORS 18.480, specifically requiring that the comparison under ORS 18.470 be stated in terms of 'each *party's* fault expressed as a percentage of the total fault attributable to all parties represented in the action.' (Emphasis added.) The legislature also adopted ORS 18.455 governing the effects of settlements with less than all tortfeasors. Nothing in these changes would indicate any intent by the legislature to have the trier of fact consider the fault of anyone not a party to the action when making a comparative fault analysis under ORS 18.470. However, the legislature did not clarify what would happen if a party defendant in an action settles before the comparative fault issue is submitted to the trier of fact." *Id.* at 226-27 (emphasis in original; footnote omitted).

After an extensive review of the legislation, this court inferred that the legislature intended to include in a comparative fault analysis only a person still a party at the time the factfinder makes the comparative fault decision:

"Because ORS 18.480 expressly provides that when requested by a party, 'the trier of fact shall answer special questions indicating * * * the degree of each parties' fault expressed as a percentage of the total fault attributable *to all parties represented in the action,*' a once-named party who settles a case prior to or during a trial is no longer a party in the action." *Id.* at 230-31 (emphasis in original).

Under the rule of law from *Mills*, Holt's fault would not have been an issue for the trier of fact in this case. O'Brien argues, however, that *Mills* is no longer the law in the light of legislative amendments to ORS 18.485 in 1987. We disagree.

At the time *Mills* was decided, ORS 18.485 (1985) provided:

"Each joint tortfeasor defendant is jointly and severally liable for the entire amount of the judgment awarded a plaintiff, except that a defendant whose percentage of fault is less than that allocated to the plaintiff is liable to the plaintiff only for that percentage of the recoverable damages."

As part of a legislative package enacted during the 1987 session, the legislature amended that statute to provide in part:

"(2)  In any civil action arising out of bodily injury, * * * the liability of each defendant for noneconomic damages awarded to plaintiff shall be several only and shall not be joint.

"(3)  The liability of a defendant who is found to be less than 15 percent at fault for the economic damages awarded the plaintiff shall be several only."

In the present case, the trial court interpreted ORS 18.485, as amended, to require a determination of whether a defendant was less than 15 percent at fault even when there were no claims against multiple defendants going before the trier of fact. O'Brien maintains that the trial court was correct and that the 1987 legislature's intent in amending the statute was that a defendant would pay only in proportion to its own fault. O'Brien asserts that the legislature did not foresee the problem of a potential defendant who settled with a plaintiff and that the legislature appeared to assume that all tortfeasors would be named as defendants and all would be before the jury.

In interpreting a statute, this court's role is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do that, the court examines both the text and context of the statute. That is the first level of our analysis. In this first level of analysis, the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent. *Ibid.* Also at the first level of analysis, the court considers the context of the statutory provisions at issue, which includes other provisions of the same statute and other related statutes. If the legislature's intent is clear from the above-described inquiry into text and context, further inquiry is unnecessary. *Id.* at 611. As part of the text and context, the court includes consideration of its own prior interpretations of the statute. *See Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) (when this court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment).

Nothing in the text of ORS 18.485, as amended, indicates that the legislature intended to affect the questions presented to the trier of fact under ORS 18.480(1)(b), regarding the "degree of each *party's* fault expressed as a percentage of the total fault attributable to all parties represented in the action." (Emphasis added.) The statute, as amended, makes no reference to the fault or liability of anyone who is not a "defendant." However, if ORS 18.485(3), as amended, is read in isolation, the question arises whether the statute requires a determination regarding less than 15 percent of fault only when there are multiple defendants, or whether it applies when there is only "a defendant." Read in context with ORS 18.480 and its provision regarding jury determinations of "each party's fault expressed as a percentage of the total fault attributable to all parties," the most apparent interpretation of ORS 18.485 as amended is that it applies to the jury's determination of percentages made under ORS 18.480 and, thus, involves only percentages of fault attributable to parties to the action.

On the other hand, it is plausible that the legislature's use of the words "a defendant" in ORS 18.485 indicates that the 15 percent limit applies even when there is only one defendant and when it has been stipulated that the plaintiff was not at fault, as was the case here. From our examination of text and context, we are unable to conclude that the legislature's intent is clear. Thus, we turn to the second level of analysis, which is to consider the legislative history of ORS 18.485, as amended in 1987, to determine whether the legislature intended the 15 percent limitation on joint and several liability to apply to circumstances such as these. *See PGE*, 317 Or at 611-12 (explaining method of analysis).

Senate Bill 323 (1987) was a comprehensive bill that dealt with a large number of liability and insurance issues, of which the proposed limitations on joint and several liability were but a small part. However, the joint and several liability provisions were discussed in several committees that considered the bill. One of the concerns voiced most strongly in the various hearings and work sessions was that the 15 percent limit on joint and several liability for economic damages

would encourage defendants to join other third-party defendants in cases, often judgment-proof or "shallow pocket" defendants, in order to reduce the likelihood of being allocated a percentage of the damages greater than 15 percent.[8] Had the legislature contemplated that its changes to ORS 18.485 would allow juries to allocate fault to non-parties, this would not have been a concern; a defendant would have had no need to join third-party defendants in order to reduce its damages in this manner.

In the Senate Judiciary Committee, where SB 323 originated, committee staff presented an exhibit that compared the relevant portions of SB 323 with HB 2625, another measure dealing with a similar subject. That exhibit stated that, under SB 323:

"trier of fact (judge or jury) makes findings
(1) each plaintiff's total damages
(2) percent of total fault attributed to each party, including plaintiff and third party defendants." Senate Judiciary Committee, March 5, 1987, Exhibit A.

On the other hand, the parallel provisions of HB 2625 were described as:

"damages allowed are reduced in proportion to share of fault attributed to any other cause or to any person not a party to the action." *Id.*

Had the provisions of SB 323 been intended to have the same effect as the described provisions of HB 2625, as O'Brien now argues, some member of the legislature probably would have commented on it. However, no comment was made on this point.

---

[8] *See, e.g.*, Senate Judiciary Committee, March 3, 1987, Tape 47, Side B (Senator Cohen's remarks that proposed changes in joint and several liability would not reduce problem of "dragnet" of defendants being brought into lawsuits); House Judiciary Committee, May 12, 1987, Tape 545 (Mr. Bendorf, a trial lawyer, suggested that, if joint and several liability is eliminated, then defendant's opportunity to bring in judgment-proof third-party defendants in order to reduce liability should also be eliminated); House Judiciary Subcommittee 1, May 20, 1987, Tape 609 (Representative Phillips expressed concern that jury only allocating percentage among parties could increase the number of parties to an action); Conference Committee, June 17, 1987, Tape 1, Side A (Senator Frye noted that the limitation on joint and several liability would increase the likelihood that initial defendants would look for others to share the blame to reduce their percentage, resulting in more defendants being brought into cases).

The subject of joint and several liability also was discussed by the House Judiciary Committee in a session that addressed the effects that another proposed measure, SB 222, would have on the pertinent provisions of SB 323.[9] That bill would have limited third-party practice in tort cases.

Senator Frye explained that the purpose of SB 222 was to abolish third-party practice in tort cases only, but not in contribution cases, stating that the intent was to preclude named defendants from filing claims against third parties in the original case. He said:

> SENATOR FRYE: "And one reason we felt that, well you've heard the arguments pro and con on third-party practice, but we felt that since we do have contribution available in Oregon, that eliminating third-party practice in the principal action in tort actions would certainly not prevent — preclude a remedy on the part of the defendant who is sued originally. The complete expression is contribution among joint tortfeasors. That's the way we speak of it."

> REPRESENTATIVE BUNN: *"If 222 is passed, how would we make a determination — let's say we have a plaintiff and a defendant and there's a third-party defendant out here that is not called in? How are we going to determine how we allocate fault between the two defendants if defendant two is never pulled in to the case?"*

> [UNKNOWN SPEAKER]: "Well, we'll pro-rate the percentage of fault between the two."

> SENATOR FRYE: "Well, the way it's done under the comparative negligence law, the jury would be instructed as to the percentage of fault of the defendants in the case, and the plaintiff if any, and whatever the percentage of the defendant's contribution determined at fault would determine the amount of damages to be assessed. Of course, as you know, under the doctrine of joint and several liability, the, if there is more than one joint tortfeasor, *the one that's in the case would be responsible for the entire amount of the damages, so that there wouldn't be an allocation among parties not in the case."*

> REPRESENTATIVE BUNN: *"That's the very point I'm making. Particularly if we choose joint and several liability, if you have no way of bringing that other defendant in, then there would be no way of allocating a percentage of fault to*

---

[9] Senate Bill 222 was not approved by the 1987 legislature.

*defendant that's not brought in. So we have a significant effect on diminishing the effect of any changes we made on joint and several liability."*

SENATOR FRYE: "Well, it would affect joint and several liability — well, *the theory of joint and several liability wouldn't apply if there was only one defendant.*"

REPRESENTATIVE BUNN: *"That's the very point I'm making. If we keep that other defendant out, we're losing the opportunity to deal with the percentage of fault —"*

SENATOR FRYE: *"That's right.* In the principal case, you would. The sole defendant would have to rely on the doctrine of contribution in order to recover any share. That's right. That's the, one of the considerations I'm sure that we've talked about before."

REPRESENTATIVE HANLON: "Senator Frye, under those circumstances, can you describe to us, with a defendant who isn't brought into the case by the plaintiff, isn't that fault allocated within the practical terms of the courtroom and used to advantage by looking at the person that isn't there?"

SENATOR FRYE: "Yeah, the empty chair defense, you know, is one of the more familiar — "

REPRESENTATIVE HANLON: "The what?"

SENATOR FRYE: "The empty chair defense. That is, where the argument is made to the jury by the defense lawyer that my client isn't really the party at fault here, it's somebody else that wasn't brought into the case, and I've seen that used — very effective argument. And of course, the jury as a matter of fact has to decide that the defendant in court is a responsible party and very often I suppose could conclude that somebody who wasn't in the case was at fault, not the defendant on trial." House Judiciary Committee, June 8, 1987, Tape 738 (emphasis added).

That exchange makes it clear that several legislators involved in committee work on SB 323 did not intend SB 323 to provide for allocation of percentages of fault to potential tortfeasors who were not defendants. Although isolated statements made in committee are not necessarily indicative of the intent of the entire legislature, in view of the fact that we have found no suggestion, either by a legislator or any witness in committee, that SB 323 was intended to have the effect of allocating percentages of fault to anyone other than

defendants and plaintiffs, those comments are significant. We conclude that the legislative history supports the proposition that the 1987 amendment did not overrule *Mills* or revise that portion of the statute that *Mills* interpreted.[10]

In sum, we conclude that the most plausible reading of the statute's text and context, as well as the legislative history of the 1987 amendments to ORS 18.485, supports plaintiff's contention that fault should not have been apportioned between O'Brien and a non-party. We hold, therefore, that the trial court erred in determining that the jury should be instructed to assign percentages of fault to Holt's estate and to O'Brien.[11]

## SUFFICIENCY OF THE VERDICT

■ We now turn to the question whether, in the light of the jury verdict, the trial court could have entered an appropriate judgment in this action. Plaintiff argues that, under the doctrine of surplusage, the court should have disregarded the irrelevant material contained in questions and answers 2 and 3, because the remainder of the verdict answered all material issues in the case. O'Brien responds that plaintiff failed to object to the verdict and that plaintiff's objection to the judgment came too late. Essentially, O'Brien's argument is that the trial court could not have entered the judgment that plaintiff wished, considering the jury's response to questions 2 and 3 on the special verdict form.

In *Martin v. Cambas*, 134 Or 257, 293 P 601 (1930), the jury returned a verdict that included general damages against one defendant as well as an apportionment of punitive

---

[10] Defendant argues that, technically, Holt's estate was a "party," because it had been a named defendant in the Tiara Toepfer claim, and the dismissal of that claim did not specifically dismiss Holt's estate from the case. However, in *Mills v. Brown*, 303 Or 223, 230-31, 735 P2d 603 (1987), this court stated:

"We infer that the legislature intended to include in a comparative fault analysis only a person still a party at the time the fact-finder makes the comparative fault decision. Because ORS 18.480 expressly provides that when requested by a party, 'the trier of fact shall answer special questions indicating * * * the degree of each parties' fault expressed as a percentage of the total fault attributable *to all parties represented in the action*,' a once-named party who settles a case prior to or during a trial is no longer a party in the action." (Emphasis in original.)

[11] The Court of Appeals reached a similar result on March 22, 1995, in *Faverty v. McDonald's Restaurants*, 133 Or App 514, 892 P2d 703 (1995).

damages among all three defendants. Noting that the law did not allow the jury to apportion damages among joint tortfeasors, this court stated:

> "It will be noted that the verdict assessing general damages in favor of plaintiff and against defendant William J. Blake in the sum of $5,000 is complete without that part of the verdict assessing punitive damages and attempting to apportion the same. The verdict is, in effect, in favor of all the defendants, except as to William J. Blake, as to general damages.
>
> "* * * * *
>
> "That part of the verdict assessing and apportioning punitive damages should be treated as surplusage and deleted." *Id.* at 260-63.

Plaintiff argues that the present case is similar to *Martin*; the law does not allow the jury to allocate fault to non-parties, and that part of the verdict attempting to do so should be treated as surplusage and deleted.

O'Brien first argues that cases involving surplusage in verdicts typically concern situations in which the jury, on its own, spontaneously adds extraneous matter to the verdict. Apparently, O'Brien is contending that the doctrine does not apply where the extraneous matter is solicited on the verdict form. We do not find that distinction to be persuasive. In *State ex rel Sam's Texaco & Towing v. Gallagher*, 314 Or 652, 655-57, 842 P2d 383 (1992), the jury was unable to agree on answers to all the questions on a special verdict form and, instead, took the questions out of order and reached decisions on several of them. The jurors were unable to reach agreement as to whether one of the defendants had been negligent, but all agreed that any negligence on the part of the defendant had not been a substantial factor in causing the plaintiff's injuries. *Id.* at 655-56. The trial court refused to enter judgment on the verdict and granted a mistrial. This court issued a peremptory writ of mandamus, directing the trial court to receive the verdict, holding that the answer to the second question was sufficient to require that a verdict be entered in favor of that defendant. *Id.* at 660. Although that case does not address directly the question of surplusage as part of a jury's verdict, it does undermine O'Brien's suggestion here that the remainder of an otherwise sufficient verdict should

not be allowed to stand when the jury has been given questions on a special verdict form that are unnecessary.

O'Brien next argues that the doctrine of surplusage should not be applied when the issue in the surplus material is interrelated with the necessary findings. O'Brien suggests that, had the jury been asked to make a choice "between no fault or assessing [O'Brien] with all the damages, the jury might have found zero fault [by O'Brien] rather than 3.5 percent fault." We note, however, that the jury was not instructed as to how, or even if, its apportionment of fault between Holt and O'Brien would affect the amount of damages assessed against O'Brien. Nor was the jury told how plaintiff's settlement with Holt's estate would affect the amount of damages assessed against O'Brien. The jury was specifically told, both in instructions and on the verdict form, that making any required deductions in the amount of damages was not its job — that that was the job of the trial court. Moreover, the verdict form specifically required the jury to decide Question 1, regarding O'Brien's negligence, before moving on to the questions regarding percentages of fault.

We assume that a jury has followed its instructions. *State v. Walton*, 311 Or 223, 250, 809 P2d 81 (1991). We are not persuaded that the surplusage included in Questions 2 and 3 affected the jury's answer to Question 1. We hold that the trial court erred in entering a judgment that reduced plaintiff's damages recoverable from O'Brien's based on an apportionment of fault to a non-party. We further hold that the Court of Appeals erred in determining that the issue was not properly before it.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is vacated. The case is remanded to the circuit court for entry of a judgment for plaintiff against defendants O'Brien in the sum of $94,175.