Argued and submitted June 13, reversed and remanded September 11,
respondent's motion for reconsideration filed September 11 allowed by opinion
November 13, 1996
See 144 Or App 399, 927 P2d 623 (1996)

Tony D. FARO,
*Respondent,*

*v.*

HIGHWAY DIVISION,
Department of Transportation,
State of Oregon,
*Appellant.*

(92-01-34624; CA A86430)

923 P2d 1298

Jas. Adams, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

George W. Kelly argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

In 1990, plaintiff was discharged by his employer, the defendant State Highway Division. Defendant's explanation for the discharge was that plaintiff had stolen property from it. Plaintiff brought this action for wrongful discharge and for unlawful employment practices, ORS 659.121, in connection with the discharge. Plaintiff alleged that the discharge was actually motivated by discrimination against him because of his visual impairment and in retaliation against him because he was a "whistleblower." The case was tried to a jury, which found for defendant on the wrongful discharge claim and on two of the three unlawful employment practice specifications. However, the jury found that defendant had engaged in an unlawful employment practice in connection with plaintiff's physical impairment, and it awarded compensatory and punitive damages. Defendant appeals, and we reverse.

Although all of plaintiff's bases for alleging liability related to his discharge, at trial he introduced evidence of earlier actions by defendant, such as not promoting him because of plaintiff's impairment and/or other improper considerations. That evidence supported his efforts to show ongoing discriminatory or other improper motives that allegedly later manifested themselves in connection with the discharge. Defendant requested, and the trial court refused, the following limiting instruction:

> "You have heard evidence about alleged past discrimination in Plaintiff's workplace. This included testimony about Plaintiff's job assignments, Plaintiff's promotion opportunities, and racial remarks made to one of Plaintiff's witnesses, Mr. Tony Grier.

> "This evidence was admitted only for a limited purpose. You may consider this evidence *only* to the extent, if any, that you find the evidence helps you assess whether the person or persons who terminate[d] Plaintiff's employment were substantially motivated by an unlawful purpose.

> "In other words, you cannot award Plaintiff a verdict or damages based solely on alleged past acts of discrimination in the workplace." (Emphasis in original.)

The special verdict form, with the jury's answers emphasized, reads in relevant part:

"1. Did defendant engage in unlawful employment practices concerning plaintiff, in any of the following ways:

"a. For disclosures by plaintiff of wrongdoing by or within the Highway Division?

"Answer: *no* (yes or no)

"b. Because plaintiff reported on criminal activity or cooperated with a law enforcement agency conducting a criminal investigation?

"Answer: *no* (yes or no)

"c. Because of plaintiff's physical impairment?

"Answer: *yes* (yes or no)

"2. Was plaintiff wrongfully discharged?

"Answer: *no* (yes or no)."

Accordingly, in view of the evidence presented at trial, the jury could have found defendant liable for the earlier discriminatory actions, rather than for the discharge that plaintiff pleaded.[1] The requested limiting instruction, however, would have apprised the jury that the earlier actions could not be an independent predicate for liability. Defendant assigns error to the court's refusal to give the instruction.

■ The threshold question is whether we may consider this assignment of error. Plaintiff asserts that the requested instruction was directly at odds with the special verdict form, and that, although defendant objected to the form at trial, it did not assign error on appeal to the use of the form. Plaintiff reasons that, therefore, defendant is foreclosed from contending now that the refusal to give the instruction was error, because that ruling and the use of the form were products of

---

[1] The possibility is not academic. Under the evidence, viewed favorably to plaintiff, the physical impairment was *directly* connected primarily or exclusively to the past actions, rather than the discharge. Moreover, four times during its deliberations, the jury sent notes to the court, inquiring whether the question that it eventually answered affirmatively pertained "to unlawful employment practices over the years of [plaintiff's] employment or only to wrongful discharge." No helpful answer resulted.

the same factual and legal premises, and the form's use stands unchallenged. Even assuming the correctness of plaintiff's underlying understandings, we do not agree that defendant has "waived" or is barred from asserting any error in the refusal to give the instruction.

The circumstances under which a party may challenge one ruling, without also challenging other rulings that mirror the same asserted error, are not well defined. It is less than clear when such an omission is to be regarded as leaving an independent basis for affirmance uncontested, and when it simply avoids unnecessary duplication. The Supreme Court recently addressed an analogous issue, in the context of trial court preservation, in *Davis v. O'Brien*, 320 Or 729, 891 P2d 1307 (1995). The court explained:

> "The specific question to be addressed is: If [plaintiff] raises a substantive issue by motion before trial, but does not raise the issue again when the court instructs the jury and submits the special verdict form, does that conduct waive that party's argument on the issue, or may the party raise the issue again when it comes time to enter the judgment?" *Id*. at 738.

The court held that the issue was not waived and could be raised. It stated that "the subjects of [the] jury instructions and verdict form were not separate from the question raised in the motion *in limine*." For that reason, and because both the trial court and the defendant were fully apprised of the plaintiff's position and unhampered in their abilities to perform their functions, the court concluded that there was no waiver or fatal lack of preservation. *Id*. at 737-39. *See, to a similar effect, Robinson v. CSD*, 140 Or App 429, 914 P2d 1123 (1996).

The same principles are equally pertinent in determining whether cumulative assignments of error are necessary at the appellate stage. The requested instruction here was sufficient to alert plaintiff's counsel and the trial court to defendant's legal theory, independently of the later submission of the verdict form that permitted the jury to make a finding that was in conflict with the instruction. Moreover, the theory can and has been fully presented and fully

responded to on appeal under the assignment that defendant has made. We conclude that the assignment is reviewable.

■ The answer on the merits of the assignment is clear. Plaintiff's only pleaded theories of liability arose out of his discharge. The requested instruction would have confined the jury's use of the evidence about other matters in such a way that liability and damages could be based only on the pleaded theories. It is hard to imagine a more appropriate occasion for a limiting instruction. Plaintiff argues, *inter alia*, that other instructions adequately conveyed the substance of the requested one to the jury and that the requested instruction was, in part, an incorrect statement of the law. We disagree. The refusal to give the instruction was error, and it requires reversal.

■ Because they are likely to arise on remand, we turn to defendant's other assignments. Three of the four assail the court's submission of the punitive damages issue to the jury. ORS 30.270(2), a provision of the Oregon Tort Claims Act (OTCA), precludes awards of punitive damages in actions on claims under the OTCA. ORS 659.121(2) expressly authorizes punitive damages in actions under the unlawful employment practice statutes. Defendant relies principally on *Griffin v. Tri-Met*, 318 Or 500, 870 P2d 808 (1994), for its contention that punitive damages are not recoverable here. In that case, the court concluded that actions under ORS chapter 659 are subject to the OTCA. It then concluded that the liability limit of ORS 30.270(1)(b) (1985) did not apply only to damages, but was meant as a more comprehensive limitation on what could be recovered from governmental bodies in OTCA actions. Therefore, the court held, the attorney fees and costs that are expressly authorized in ORS chapter 659 actions are also includible in and count against the OTCA limit. The court said:

> "We are cognizant that, in deciding in this case to honor the policy choice of the legislature in imposing liability limits in the OTCA, we detract to some degree from the policy choice that the legislature made in providing for attorney fees and costs in employment discrimination actions. But making *a* choice between the two policies cannot be avoided, because both cannot be fully vindicated at the same time. We have chosen the policy of the statutory scheme that governs the

amount of liability of governments for their torts—the OTCA—over the policy of a statutory scheme that applies to one particular kind of harm that a government might cause. We believe that our choice is inherent in the OTCA. Given the political struggle that always accompanies attempts to enlarge the financial exposure of governmental bodies, as exemplified in the legislative history to which we have referred, we are unwilling to attribute to the legislature an intent—never expressed anywhere—to waive the OTCA limits on this single form of wrong out of all the kinds of wrongs that could be committed by government bodies." (Emphasis in original.) *Id*. at 514.

That rationale is as applicable to the question in this case as it was to the question in *Griffin*. Although they differ in some instances from those in *Griffin*, our analysis of the statutes that are at issue here, pursuant to *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), is consistent with the *Griffin* rationale and with a conclusion that parallels the one reached in *Griffin*. We hold that the OTCA statute and policy proscribing punitive damages prevail over the contrary provision and policy in ORS 659.121. On remand, the claim for punitive damages should be stricken.[2]

■ In its last assignment, defendant contends that the court erred by excluding certain testimony that it sought to introduce. The single allegation of theft that loomed largest in defendant's decision to fire plaintiff involved six tires, which plaintiff testified that he purchased from a coworker, Kevin Sieders, without knowing that they had been stolen. The court refused to admit Sieders' proffered testimony that, before plaintiff acquired the tires, Sieders informed him that they were stolen, and that the two later concocted a false story about Sieders having bought the tires at a yard sale. There was no evidence, however, that defendant was aware at the time of plaintiff's discharge about the putative facts that defendant sought to elicit from Sieders at trial.

Defendant contends that the excluded testimony was admissible for two purposes: impeachment of plaintiff

---

[2] The common-law wrongful discharge claim is of course subject to the OTCA.

and "to prove that plaintiff was indeed a thief and [defendant] was right to have so believed when it fired him." Plaintiff answers that the evidence was not relevant to defendant's reason for firing plaintiff, because defendant was not aware at the time of the discharge that Sieders had ostensibly told plaintiff that the tires were stolen property. Plaintiff contends further that the testimony was not admissible for impeachment, because it was extrinsic evidence pertaining to a collateral matter, and also, as the trial court ruled, it was more prejudicial than probative.

If the evidence were offered and excluded under materially similar circumstances on remand, we would find no error. Sieders' testimony would have had little direct tendency to make it more likely that defendant's reason for firing plaintiff four years earlier was its belief that he had stolen defendant's property. Defendant's argument seems to us to blur that question and the one about which the evidence is directly probative—whether plaintiff was in fact a thief.[3] There might be enough of a connection between the likelihood that plaintiff was a thief and the likelihood that defendant believed he was—a belief about which defendant was not in much doubt *without* the benefit of Sieders' later recollections—to make Sieders' testimony inferentially if marginally probative of the theory that defendant fired plaintiff because of that belief. *But see* note 3. If so, the evidence would not go solely to a "collateral matter," and could also be admissible for impeachment. *See John N. Sheagren, M.D., P.C. v. Albrecht*, 123 Or App 553, 556, 860 P2d 868 (1993).

However, Sieders' testimony would not have been strong evidence of the ultimate fact—why defendant fired plaintiff—compared to its much stronger tendency to show the collateral fact that plaintiff was a thief. Especially when the fact that Sieders himself is an admitted thief and liar is factored in on the probativeness side of the equation, the trial

---

[3] We note that there is no *necessary* correlation among (1) plaintiff being a thief, (2) defendant thinking he was, and (3) that belief, rather than something else, being the sole or main reason for the discharge. None of those propositions follows automatically from or necessarily precedes any of the others.

court was within the boundaries of its discretion in excluding the evidence as more prejudicial than probative. OEC 403.

Reversed and remanded.