Argued and submitted March 13, affirmed May 7, petition for review denied August 7, 2014 (355 Or 879)

In the Matter of S. L.,
a Child.

**DEPARTMENT OF HUMAN SERVICES,**
*Petitioner-Respondent,*

*v.*

**T. L.,**
*Appellant.*

Marion County Circuit Court
J110575;
Petition Numbers 071113LAN1, 073113LAN1;
A155439 (Control)

In the Matter of N. L.,
a Child.

**DEPARTMENT OF HUMAN SERVICES,**
*Petitioner-Respondent,*

*v.*

**T. L.,**
*Appellant.*

Marion County Circuit Court
J110576;
Petition Numbers 071113LAN2, 073113LAN2;
A155440

In the Matter of A. L.,
a Child.

**DEPARTMENT OF HUMAN SERVICES,**
*Petitioner-Respondent,*

*v.*

**T. L.,**
*Appellant.*

Marion County Circuit Court
J110577;
Petition Numbers 092611LAN3, 073113LAN3;
A155441

In the Matter of A. L.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. L.,
*Appellant.*

Marion County Circuit Court
J110578;
Petition Numbers 071113LAN4, 073113LAN4;
A155442

326 P3d 1219

Megan L. Jacquot argued the cause and filed the brief for appellant.

Michael R. Salvas, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Lagesen, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

Father appeals the juvenile court's jurisdictional judgments, which made his four children wards of the court and suspended his visitation with them. As we explain below, father's appellate arguments are not preserved and, therefore, we affirm.

As relevant here, the juvenile court took jurisdiction over the children, as to father, based on father's substance abuse, prostitution activities, and domestic violence.[1] Specifically, the court found that, as alleged by the Department of Human Services (DHS), the children's conditions and circumstances were such as to endanger them because (1) "father's substance abuse interferes with his ability to safely parent," (2) "father has engaged in the ongoing behavior of seeking and inviting strangers into the child[ren's] home for the purpose of exchanging sexual favors for money and controlled substances, often encouraging those strangers to be under the influence of controlled substances[,]" and (3) "father uses violence against the child[ren's] mother." *See* ORS 419B.100(1)(c) (the juvenile court has jurisdiction over children whose "condition[s] or circumstances" endanger their welfare).

In his first assignment of error, father asserts that the juvenile court erred in finding that DHS had proved the second allegation.[2] In support of that assignment, father argues that DHS did not prove that the alleged prostitution activities endangered the children. Specifically, he argues that DHS failed to prove that the children were endangered by any prostitution activities that may have occurred in the past because "there was no evidence presented that the

---

[1] The juvenile court took jurisdiction over the children, as to mother, based on mother's substance abuse and prostitution activity.

[2] On appeal, father challenges only one of the three bases upon which the juvenile court took jurisdiction over the children with respect to father. Even though any one of those bases constitutes sufficient grounds for the juvenile court to exercise jurisdiction over the children, *see* ORS 419B.100(1)(c), we address father's challenge because the jurisdictional bases have continuing consequences throughout a juvenile dependency case. *See Dept. of Human Services v. N. M. S.*, 246 Or App 284, 293-94, 266 P3d 107 (2011) (explaining that, at a permanency hearing, if the case plan is reunification, parental progress is measured in terms of the parent's efforts toward remedying the barriers to reunification identified in the dependency petition and case plan).

children were actually exposed to any sex acts," and that DHS failed to prove that the children were at risk of harm from any future prostitution activities because "[f]ather was not in a current relationship with [m]other" and "there was no evidence that [solicitation of sexual acts] was likely to recur absent [m]other's 'participation.'"

Father's argument is unpreserved. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court ***."). In the juvenile court, father admitted that he and mother had participated in sexual activities with strangers, but denied that he had known that mother had received money and drugs in exchange for their participation. In other words, father denied having knowingly participated in prostitution. Father asked the court to dismiss the prostitution allegation, asserting that "the Court has a 'he said she said' situation," and that mother was not credible. The court expressly rejected father's argument that he did not knowingly participate in prostitution.[3] At no point did father make an alternative argument that the alleged prostitution activities did not endanger the children.[4] Thus, DHS did not have an opportunity to respond to that argument and the trial court did not have an opportunity to address it. *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995) (Preservation ensures that "parties are not taken by surprise, misled, or denied opportunities to meet an argument."); *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify

---

[3] The juvenile court found that father and mother had engaged in prostitution for years and that father had authored some of their online solicitations.

[4] In the "Preservation of Error" section relating to his first assignment of error, father cites a transcript page where, father asserts, he argued that he "was not currently in a relationship with [m]other and the allegations did not present a current safety concern." However, it is apparent from the transcript that that argument was directed at the domestic violence allegation. After addressing the prostitution allegation, father's attorney said:

"*** And finally as to 2C [the domestic violence allegation] of that same petition, I think there's abundant evidence that the father is not currently in a relationship with the mother and I'd ask the Court to dismiss that allegation because, based on the current circumstances, despite [father's] admission to the one incident of choking, because they are no longer in a relationship that does not present a current safety concern."

tify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."). As a result, we will not address it.

In his second assignment of error, father asserts that the juvenile court erred in suspending his visits with the children. During the jurisdictional hearing, the family's DHS case worker testified that, if the parents had traumatized the children, "then ongoing contact isn't going to help [the children] until they have appropriate therapeutic support." She also testified that she believed that the children needed "time to stabilize and have appropriate intervention for the trauma that they are exhibiting." For his part, father testified, in response to questioning by his attorney about whether the court should suspend his visitation, that he believed that "it would be more detrimental to [the] children to not be able to see [him]" and that he had "requested that [his] visitations be increased several times[.]" The court ordered that the parents' visitation with the children be suspended "until such time as a professional can tell me that would be appropriate for the kids."

On appeal, father asserts that "when a child is placed in substitute care, the parent is entitled to visitation with the child unless the record establishes that visitation with the parent would endanger the health or safety of the child." In support of that proposition, father cites ORS 419B.090(4) and *Santosky v. Kramer*, 455 US 745, 753, 102 S Ct 1388, 71 L Ed 2d 599 (1982), both of which establish, generally, that the liberty interests of parents are protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Based on that proposition, father argues that the court erred because DHS "failed to show any evidence that [f]ather behaved inappropriately in visits or was causing any safety risk to the children." Thus, on appeal, father is asserting that DHS failed to present constitutionally sufficient evidence to support the court's suspension of his visitation.

Father did not make that argument in the juvenile court. At most, he asserted that denying him visitation would be harmful to the children or would not be in their best interests. On appeal, he argues for a different, more

stringent test. Unlike DHS, which argues that a juvenile court can deny a parent visitation if doing so is in a child's best interest, father now argues that, as a matter of due process, a juvenile court can deny a parent visitation only if the parent has behaved inappropriately in visits or poses a safety threat to the child. If father had raised that argument below, DHS would have had an opportunity to counter, and the juvenile court would have had an opportunity to consider, father's proposed test for suspension of visitation. DHS might have elicited additional testimony regarding father's conduct during the visits and whether the visits caused a safety risk to the children. In addition, the juvenile court might have focused on whether permitting the visits endangered the children, rather than on the different legal question of whether suspending the visits was in their best interests. Father's second assignment of error is unpreserved and, therefore, we will not address it.

Affirmed.