Argued and submitted July 29, reversed and remanded November 25, 1998,
petition for review denied March 23, 1999 (328 Or 365)

# STATE OF OREGON,
*Appellant,*

*v.*

# GINGER KAY CORNING,
*Respondent.*

## (970866; CA A97742)

971 P2d 894

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Andy Simrin, Deputy Public Defender, argued the cause for respondent. With him on the briefs was Diane L. Alessi, Interim Public Defender.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant was charged with possession of a controlled substance. ORS 475.992(4). The state appeals from an order suppressing evidence discovered during a search of defendant's purse and car. The state contends that under *State v. Hadley*, 146 Or App 166, 932 P2d 1194 (1997), the search was proper. Pursuant to *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998), we reverse and remand.

On January 10, 1997, Officer Fandrey saw a vehicle making a turn without signaling. Fandrey stopped the vehicle for the traffic infraction; defendant was the driver and sole occupant. As Fandrey talked with defendant, Officer O'Hearn arrived for backup. Fandrey advised defendant of the reason for the stop, obtained her driver's license and registration, and returned to his vehicle to check defendant's identification. After verifying the identification, Fandrey decided not to cite defendant. Fandrey turned off the overhead emergency lights and spotlight on his patrol car and returned to defendant's vehicle. He told defendant that she needed to signal before turning, returned her papers, told her that he was not going to cite her, and said "that's all" he had. At no point did Fandrey tell defendant she was free to go.

As Fandrey walked back to his patrol car, he stopped and spoke with O'Hearn for about 60 seconds and then returned to defendant's vehicle. Defendant was putting away documents, and Fandrey startled her when he returned. Fandrey told defendant that he had stopped this same vehicle in the past and then asked if there were narcotics inside it. Defendant denied possessing any drugs, and when Fandrey asked for permission to search the vehicle, defendant consented. Defendant got out of the vehicle with her purse and stood by O'Hearn. Defendant became upset during the search of the vehicle, and Fandrey stopped the search and tried to calm defendant. At that point, Fandrey noticed defendant tightly clutching her purse. He suspected that defendant might be under the influence of a narcotic, but defendant denied using drugs. Fandrey asked for and obtained permission to search her purse and found a small mirror with white powder residue on it and a baggie containing a white powder,

which he believed to be methamphetamine. Fandrey stayed with defendant while O'Hearn searched the vehicle. O'Hearn found a baggie with a brown solid substance inside, which Fandrey believed to be hashish.

Defendant moved to suppress the evidence, arguing that Fandrey exceeded the scope of ORS 810.410(3) (1995)[1] by questioning defendant and requesting consent to search. The state responded that, by the time Fandrey asked for consent to search, the traffic stop had ended and, therefore, ORS 810.410(3) did not apply. Defendant argued that the traffic stop had not ended because defendant did not have a reasonable opportunity to leave, citing *Hadley*, 146 Or App at 171-72. The trial court granted the motion to suppress, finding an insufficient temporal break before Fandrey questioned defendant concerning the drugs.

On appeal, the state raises two arguments. It first contends that the search was proper under *Hadley* because there was a sufficient break in time prior to questioning, and second, that ORS 136.432, a provision of Senate Bill 936, requires denial of the motion to suppress. Because we reverse and remand on the first issue, we do not address the state's argument regarding Senate Bill 936.

ORS 810.410(3) prohibits an officer from expanding a traffic stop beyond investigation of the infraction unless the officer "can point to some basis other than the traffic infraction to broaden the scope of the investigation." *State v. Dominguez-Martinez*, 321 Or 206, 212, 895 P2d 306 (1995). The officer must have a "reasonable suspicion" that a defendant committed an illegal act, other than the infraction, before the officer can broaden the scope of the investigation. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996).

---

[1] Our decision in this case concerns only the 1995 version of ORS 810.410(3), and all references to the statute in the text that follows are to that earlier version. ORS 810.410(3) (1995) provided, in part, that a police officer:

"(a) Shall not arrest a person for a traffic infraction.

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

However, ORS 810.410(3) is limited to the duration of the traffic stop. *Hadley*, 146 Or App at 171. Thus, the validity of a particular search may depend on whether the traffic stop has ended and a noncoercive conversation between an officer and a defendant has begun. In *Hadley*, we described the test for determining when a traffic stop ended:

> "[A] traffic stop continues until the motorist has had an objectively and temporally reasonable opportunity to move on. As a practical matter, that means, in virtually all instances, that the traffic stop continues * * * until the motorist has had a 'real time' opportunity to move on. There must, in other words, be a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any related inquiries." *Id.* at 171-72.

That formulation was an attempt to provide a "bright line answer to [the] threshold inquiry" of whether a traffic stop had terminated or was ongoing. *Id.* at 171.

In *Toevs*, the Supreme Court, without reference to our analysis in *Hadley*, clarified "the proper methodology for determining whether a traffic stop either continued or ended." *Id.*, 327 Or at 532. There must be a fact-specific inquiry into the totality of the circumstances to determine whether "a person *subjectively* believes that a law enforcement officer significantly has restricted or interfered with that person's liberty or freedom of movement *and* [whether] such a belief is *objectively reasonable* under the circumstances." *Id.* at 535 (emphasis in original).

"The determination of a defendant's *subjective* belief * * * is a question of fact to be determined by the trial court." *Id.* (Emphasis in original.) We note that subjective belief can be inferred from the totality of the circumstances. *See State v. Koester*, 117 Or App 139, 145, 843 P2d 968 (1992), *rev den* 315 Or 644 (1993) (considering subjective probable cause). Here, the trial court made no finding as to defendant's subjective belief which, ordinarily, would necessitate a remand. However, a remand is not required because we conclude that even if defendant subjectively believed at the time the officer requested consent to search that her liberty was significantly restricted, such a belief would not be objectively reasonable

under the circumstances. *See Toevs,* 327 Or at 535 ("[t]he determination whether a defendant's subjective belief is *objectively reasonable* * * * requires an independent assessment of the facts" by an appellate court) (emphasis in original).

In assessing objective reasonableness, we examine the totality of the circumstances to ascertain whether an officer's "continuous show of police authority constituted conduct that was 'significantly beyond that accepted in ordinary social intercourse.'" *Id.* at 536-37 (quoting *State v. Holmes,* 311 Or 400, 410, 813 P2d 28 (1991)). We consider, for example, the temporal break in action, whether the officer returned items to defendant, whether defendant was told that she was free to go, whether defendant's path to leave was open, whether defendant attempted to leave, and other circumstances relevant to whether a reasonable person would feel free to leave. Also important is the officer's "show of police authority," *id.* at 536, for example, whether the officer activated overhead lights or spotlights.

Defendant argues that the traffic stop had not ended because Fandrey never told defendant that she was "free to go," and defendant had yet to drive away. That argument assumes that an officer must use certain words to indicate that a traffic stop has ended and that a stop does not end until the defendant drives away. These assumptions are incorrect. *Toevs* only requires that a defendant not be subjected to a "continuous show of police authority" sufficient to make a defendant believe the officer "significantly had restricted [her] liberty or freedom of movement." *Id.* In this case, Fandrey turned off his overhead emergency lights and spotlight and told defendant that he was not going to cite her. Fandrey did not recontact defendant for 60 seconds and had a separate conversation with O'Hearn in the interim. When Fandrey did recontact defendant "she jumped in her seat" and said to Fandrey, "You scared me." Defendant's own response indicated she did not expect to be recontacted by the officer and that the officer had not continuously asserted his authority over her. Under the totality of those circumstances, an objectively reasonable person in defendant's position

would no longer believe that there was a continuing significant impairment of her liberty or freedom of movement. *Id.*

Reversed and remanded.