Argued and submitted June 30, 1998, reversed and remanded January 6, 1999

# STATE OF OREGON,
*Appellant,*

*v.*

# FROYLAN CRUZ-AGUIRRE,
*Respondent.*

## (95CR3094FE; CA A97471)

972 P2d 1206

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Diane L. Alessi, Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

## EDMONDS, J.

The state appeals the trial court's pretrial order suppressing evidence of a controlled substance that a state police officer discovered during the search of defendant's vehicle. The trial court concluded that the officer's request for consent to the search violated ORS 810.410(3)(b) (1995), as construed in *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995) and *State v. Hadley*, 146 Or App 166, 932 P2d 1194 (1997). The state argues that the search did not violate ORS 810.410(3)(b) and that even if it did, suppression is no longer proper under ORS 136.432 (section 1 of Senate Bill 936) (1997). We do not reach the state's first argument because we agree that ORS 136.432 controls. Accordingly, we reverse and remand.

Defendant was stopped by a police officer for a traffic infraction. After the stop, the officer turned off his overhead lights, returned defendant's identification documents to him, issued a citation and told him "adios." At that time, defendant was in the driver's seat of his vehicle, the car door was closed, and the engine was running. The officer's body did not impede defendant from leaving. Defendant "reached down and was starting to move the gear shift selector" when the officer recontacted him and asked if he could talk with him. Approximately seven seconds had elapsed. Defendant agreed to talk to the officer and got out of his car. The ensuing conversation led to defendant's consent to a search of his car and the subsequent discovery of the controlled substances under the back seat of the car that are the subject of the trial court's order on appeal.

After the trial court made its decision and after the briefing and argument in this case occurred, the Supreme Court issued its opinion in *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998). In *Toevs*, the court held that there must be a fact-specific inquiry under ORS 810.410(3)(b)[1] to determine

---

[1] ORS 810.410(3)(b) provides that an officer:

"May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

when a traffic stop has ended and whether the officer is permitted to seek permission to search. Under *Toevs*, a trial court must determine whether under the totality of the circumstances, there is a continuing detention at the time of the request for consent to search. The inquiry is in two parts (1) whether the defendant subjectively believes that the officer has significantly restricted or interfered with his liberty or freedom of movement and (2) whether the motorist's belief is objectively reasonable under the circumstances.

In this case, we need not remand to the trial court for a determination under *Toevs*. The trial court entered its order suppressing the evidence on May 19, 1997. Senate Bill 936 became effective on June 12, 1997, but its provisions apply to all criminal actions pending on or commenced after December 5, 1996. Oregon Laws 1997, ch 313 § 38. The indictment in this matter was filed on March 21, 1996, and it was pending on December 5, 1996. Consequently, ORS 136.432 is applicable.

**1, 2.**     Defendant argues that the state's argument under ORS 136.432 was not preserved below to the trial court and therefore should not be considered by this court under ORAP 5.45(2).[2] The purpose underlying ORAP 5.45(2) is that the preservation of an issue permits a trial court to understand and correct any error and to avoid the necessity of appeal. *State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990). Regarding the issue of preservation, the court in *State v. Hitz*, 307 Or 183, 188-89, 766 P2d 373 (1988) commented:

> "* * * We have previously drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. *See Cooper v. Eugene Sch. Dist. No. 4J*, 301 Or 358, 369 n 12, 723 P2d 298 (1986). The first ordinarily is essential, the second less so, and third least. Thus, when a potential constitutional violation is involved, the parties' omission of a dispositive source or argument of ordinary law cannot compel a court to a needless constitutional decision. *See State v.*

---

[2] ORAP 5.45(2) provides, in part:

"No matter assigned as error will be considered on appeal unless it was preserved in the lower court and assigned as error in the party's opening brief[.]"

*Kennedy*, 295 Or 260, 267, 666 P2d 1316 (1983). Of course, it is important to efficient judicial procedures that the positions of the parties be clearly presented to the initial tribunal and on appeal. *See, e.g, Shields v. Campbell*, 277 Or 71, 77-78, 559 P2d 1275 (1977). But an equally important justification for requiring preservation of claims of error, consistent with the directive to administer justice 'completely,' Or Const, Art I, § 10, is fairness to the adversary parties, and courts can avoid taking parties by surprise by inviting memoranda on inadequately briefed questions. *State v. Kennedy, supra*, 295 Or at 268. Efficient procedures are instruments for, not obstacles to, deciding the merits, particularly when the alternative is a criminal conviction that lacks a basis in law or in fact." (Emphasis in original; footnote omitted.)

In this case, the state could not have raised ORS 136.432 to the trial court as authority for its position because the statute had not yet been enacted at the time that the trial court entered its order suppressing the evidence. However, defendant argues, and the dissent agrees, that because Ballot Measure 40 was in effect at that time, the state was required to make an argument under Measure 40 in order to preserve an argument under ORS 136.432 on appeal. It is correct that the provisions of ORS 136.432 are substantially identical to a provision of Measure 40. However, Measure 40 was subsequently declared unconstitutional on an unrelated ground in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998).

We disagree that defendant's argument should be adopted as a proper application of ORAP 5.45(2). The reasons are three-fold: First, ORAP 5.45 is a procedural rule and should not be used as an obstacle to the deciding of the merits of an issue when the purpose of the rule is not furthered. Here, there was no issue under ORS 136.432 that could have been presented to the trial court to allow it to correct itself because at the time of the trial court ruling, ORS 136.432 had not been enacted.[3] Second, the intent of the legislature that ORS 136.432 be applied to pending cases is clear. That intent would be negated by the adoption of defendant's argument. It

---

[3] *See State v. Clifton*, 240 Or 378, 401 P2d 697 (1965) (holding that the failure to object at trial to the testimony of police officer about the defendant's incriminating statements on constitutional grounds did not constitute a waiver of the right to assert those grounds on appeal in light of intervening case law).

is a novel concept that in order to preserve an issue under one law, an issue must be raised under another. When the legislature's intent is so clear, it should not be defeated by the unprecedented extension of a procedural rule. Finally, Measure 40 was unconstitutional *ab initio* and a legal nullity. It is incongruous to require a party to preserve an issue under a law that had no legal effect. Had the argument been made under Measure 40, the trial court would have been correct in rejecting it.

Section 1, which is now ORS 136.432, provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution;

"(2) The rules of evidence governing privileges and the admission of hearsay; or

"(3) The rights of the press."

Under ORS 136.432, it is now error to exclude evidence obtained in violation of ORS 810.410(3)(b) unless exclusion is required under the exceptions to the statute.

■    In response to ORS 136.432, defendant makes a number of constitutional attacks, including that the statute constitutes *ex post facto* legislation in violation of Article I, section 21, of the Oregon Constitution, and Article I, section 1, of the United States Constitution, that it violates the single subject requirement for legislation contained in Article IV, section 20, of the Oregon Constitution, and that the warrantless search and seizure violated Article I, section 9, of the Oregon Constitution. We rejected defendant's *ex post facto* and single subject arguments in *State v. Fugate*, 154 Or App 643, 963 P2d 686, *modified* 156 Or App 609, 969 P2d 395 (1998).

■    As to defendant's search and seizure rights under the Fourth Amendment and Article I, section 9, defendant contends on appeal that any detention after the traffic stop had ended must be justifiable on other grounds and that at no

time before the search did any articulable facts give rise to a reasonable suspicion of an illegal activity that would justify further detention. However, there is no evidence in this record that suggests that a new detention[4] in a constitutional sense occurred when the officer recontacted defendant. In *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991), the court distinguished mere conversations or noncoercive encounters that involve no restraint of liberty from detentions that are a type of seizure that occur when an officer temporarily restrains a person's liberty or freedom of movement. Only the latter must be justified by reasonable suspicion of criminal activity. Thus, officers are entitled to engage in non-offensive contact with private citizens that is akin to acceptable and ordinary social intercourse without implicating the Fourth Amendment or Article I, section 9. Here, the officer testified:

"[I] advised the defendant the problem with narcotics trafficking that we had and asked if we could check his vehicle for that, advised him he was being tape recorded. Showed him a consent to search form and asked if he would—could read that and I believe Detective Bennett asked if he had read it in English or Spanish which he indicated that he could. He spent some time reviewing the document, reading it apparently, and then he did sign it."

There is nothing in the description of the second contact that gives rise to a conclusion that the officer significantly restricted or interfered with defendant's liberty or freedom of movement so as to constitute a seizure.

In summary, ORS 136.432, although enacted after the trial court ruled, is applicable to this case. Any statutory violation under ORS 810.410(3)(b) is not a proper ground for suppression of the evidence that was discovered as a result of the consensual search and seizure. Moreover, nothing occurred in the second contact between the officer and defendant that significantly restricted or interfered with his liberty or freedom of movement. The evidence is uncontradicted

---

[1] ORS 810.410(3)(b) restricts an officer's authority to make *inquiries* that are not related to a traffic stop. In contrast, defendant's argument is framed under the constitutional provisions that limit the authority of a police officer to effect a *seizure* of a person. Once defendant was told he could leave, commenced putting his car in gear and seven seconds had lapsed, there could have been no continuing seizure of defendant's person as the result of the traffic stop.

that he voluntarily consented to have the second contact with the officers and that he granted his consent to search. Under the circumstances it was error to suppress the evidence of the controlled substance.

Reversed and remanded.

**WARREN, P. J.,** dissenting.

The majority reverses the trial court's decision based on an issue that the state could have, but did not, raise at the trial court. I would follow ORAP 5.45 and refuse to consider that issue. Based on the issues that the state properly preserved, I would vacate the trial court's decision suppressing evidence and remand for additional findings.

The trial court concluded that the inquiry that resulted in defendant granting consent for the search violated ORS 810.410(3)(b), as the appellate courts construed it in *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995), *State v. Hadley*, 146 Or App 166, 932 P2d 1194 (1997), and similar cases. On appeal, the state makes two arguments in response. First, it argues that the search did not violate the statute. It next asserts that, under ORS 136.432 (section 1 of Senate Bill 936 (SB 936)), which the legislature adopted after the trial court's decision but which applies retroactively, suppression is no longer appropriate for an officer's violation of a statute that defines the officer's authority. On the first issue, I would hold, under the Supreme Court's recent decision in *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998), that the trial court needs to make appropriate findings relevant to a question that it did not previously consider. I would not consider the second issue because the state failed to preserve it. The state could have raised the identical issue under Ballot Measure 40 (Measure 40) of the 1996 general election, which SB 936 implements, but did not do so.

I first consider whether the trial court was correct under the law as it existed before the effective date of SB 936. If the evidence was admissible under the previous law, we would not need to consider the arguments concerning the validity of the new statute. The trial court granted defendant's motion to suppress on the ground that the officers exceeded their authority under ORS 810.410(3)(b) when they

asked defendant to consent to the search. On appeal, the state asserts both that our decision in *Hadley*, on which the trial court relied, was incorrect and that the officer's conduct was proper under that case. In *Hadley*, we held that the essential issue is whether the officer gave the defendant a "real time" opportunity to move on before renewing contact. We explained that there must be "a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any unrelated inquiries." 146 Or App at 171-72.

After the briefing and argument in this case, the Supreme Court in *Toevs* adopted a different approach to resolving when a traffic stop has ended and the officer is no longer acting under the authority of the statute, thus permitting the officer to seek permission to search. The court stated that there must be a fact-specific inquiry into the totality of the circumstances to determine two things: (1) whether the defendant subjectively believed that the officer significantly restricted or interfered with the defendant's liberty or freedom of movement and (2) whether that belief was objectively reasonable. The first question is one of fact for the trial court, while the second is one of law on which we exercise our independent judgment. *Id.* at 535.

In *State v. Corning*, 157 Or App 379, 971 P2d 894 (1998), as in this case, the trial court relied on the pre-*Toevs* law in deciding to suppress the evidence in issue. On the state's appeal, we applied the *Toevs* analysis to facts that are similar to those in this case. We stated that under *Toevs* the trial court should have made an express finding of whether the defendant subjectively believed that the officer had substantially interfered with her liberty or freedom of movement. The court could rely on the totality of the circumstances in making that finding. We did not, however, remand *Corning* for the court to resolve that question because we held that, under the facts of the case, even if the defendant had subjectively believed that her liberty was significantly restricted, such a belief would not be objectively reasonable. *Id.* at 383-84. We therefore reversed the order suppressing the evidence.

The issues that we considered in *Corning*, in deciding whether a subjective belief would be objectively reasonable, included the temporal break in the action, whether the

officer returned items to the defendant, whether the officer told the defendant that she was free to go, whether her path to leave was open, whether she attempted to leave, and whether the officer continued to show his authority, such as by leaving his overhead lights or spotlights turned on. We noted that the officer did not have to use any particular words to show that the traffic stop had ended and that the stop could end before the defendant actually drove away. *Id.* at 384. In *Corning*, the officer turned off his overhead emergency lights and his spotlight, told the defendant that he was not going to cite her, and spent the next 60 seconds in a separate conversation with another officer. When he again spoke to the defendant, she jumped in her seat and said that he had scared her. We concluded that the defendant could not reasonably believe that the officer had continuously asserted his authority over her.

With one exception, the facts in this case are similar to those in *Corning*. After he completed his paperwork, the officer turned off his overhead lights, returned the driver's license and registration to defendant, gave him the citation, and said "adios." Defendant was in the driver's seat, the car door was closed, and he began to put the car in gear. To this point, there is no significant difference with *Corning*. However, in this case the officer waited only approximately seven seconds before asking to talk with defendant again, interrupting his attempt to leave. I would hold that that difference in time may lead to a difference in result.[1] Seven seconds is a short time, barely enough for defendant to start his car moving. In contrast to the majority, I believe that under all the circumstances defendant could well experience the officer's action in reinitiating contact after so short a time, and as he was preparing to leave, as a continuation of the previous stop. The very fact that the officer interrupted defendant's efforts

---

[1] In our previous cases, we determined, based on our independent evaluation of the situation, whether the traffic stop had ended. *Toevs* changed the focus of the analysis. The issue is no longer whether *we* believe that the officer was still exercising authority under ORS 810.410(3)(b). Rather, it is whether the *defendant* believed that and, if so, whether the defendant's belief was objectively reasonable. The issue, thus, is not what we would conclude if the issue were left to us but whether a reasonable defendant could conclude what the defendant in fact concluded. Because our earlier cases concern a different issue from the one that *Toevs* makes relevant, they do not directly control the result in this case.

to leave could lead to that conclusion. If defendant believed that the officer was continuing to exercise his authority when he again asked to speak with him, thus, that belief was objectively reasonable. Whether that was his belief is something that the trial court should be allowed to determine on remand.

I turn to the issues surrounding ORS 136.432. The trial court entered its order suppressing the evidence on May 19, 1997. SB 936 became effective on June 12, 1997, after the trial court's action, but its provisions apply to all criminal actions pending on or commenced after December 5, 1996. Or Laws 1997, ch 313, § 38. Section 1, which is now ORS 136.432, provides:

> "A court may not exclude relevant and otherwise admissible evidence in a criminal action on grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

> "(1) The United States Constitution or the Oregon Constitution;

> "(2) The rules of evidence governing privileges and the admission of hearsay; or

> "(3) The rights of the press."

The state relies on this statute to support its position on appeal. In response, defendant makes a number of arguments attacking the validity of the statute. I would consider only his argument that the state failed to preserve the issue.

The state did not rely on ORS 136.432 at the trial court, for the not surprising reason that the legislature had yet to adopt it. If that were all there was to defendant's nonpreservation argument, then it would not detain me long. However, as defendant points out, SB 936 was intended to implement Measure 40, which was also effective on December 5, 1996. Section 1(f) of Measure 40 provided that crime victims have the right "to have all relevant evidence admissible against the criminal defendant[.]" ORS 136.432 relates to that section of Measure 40. The state did not refer to Measure 40 at the trial court or otherwise suggest that a violation of ORS 810.410(3)(b) should not result in suppression of the

evidence. Rather, it devoted its entire effort to showing that there had been no violation.

In *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), the Supreme Court described what a party must do in order to preserve an issue for appellate review. It distinguished between "raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument.* * * * The first ordinarily is essential, the second less so, the third least." *Id.* at 188 (emphasis in original). On appeal, the state makes an argument and identifies ORS 136.432 as the source for it. It did not, however, raise the issue on which it now relies at trial, even though that issue was available to it through the adoption of Measure 40.[2]

In response to defendant's argument about preservation, the state suggests that

"[t]here are a variety of reasons * * * why a prosecutor reasonably may elect to forgo reliance on Measure 40—*e.g.*, doubts about whether it will withstand a constitutional challenge, unwillingness to expend the resources to rely on Measure 40 in this case, or adverse prior rulings by the circuit court on that issue—that do not necessarily translate to a willingness to forgo reliance on ORS 136.432, too."

The state misses the point. The purpose of the preservation requirement is to ensure that the *trial court* has an opportunity to consider and decide the issue. The reasons that a party may decide not to raise an issue with the trial court—and, thus, not to preserve it for appellate review—are not generally relevant to whether the party has, or should have, preserved the issue. The fact remains that, when this case was before the trial court, Measure 40 was available as a ground for the state to raise the issue of whether a statutory violation requires suppression of the evidence, and the state did not raise that issue. By not doing so, the state waived the issue for appellate review.[3] By reaching the issue despite the

---

[2] The "issue" in this case, for the purposes of *Hitz*, is that changes in the law prohibit the suppression of constitutionally admissible evidence simply because an officer violated a statute in acquiring it. Both Measure 40 and ORS 136.432 are authority that support that issue. Although ORS 136.432 was not available at the time of the trial court's decision, Measure 40 certainly was.

[3] The Supreme Court's subsequent decision invalidating Measure 40, *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998), does not affect this conclusion. For

state's failure to preserve it, the majority excuses it from com-
plying with one of the basic prerequisites to seeking appellate
review.

I dissent.

---

preservation purposes, the question is whether the state had legal support for rais-
ing the issue at the trial court, not whether it would have ultimately been success-
ful on appeal if it had done so.