Argued and submitted November 5, 1998; resubmitted en banc October 13, 1999, reversed and remanded March 1, 2000

## OREGON ACCOUNT SYSTEMS, INC.,
an Oregon corporation,
*Appellant,*

*v.*

## Floyd S. GREER,
Linda B. Greer,
State of Oregon, by and acting through
the Department of Veterans' Affairs,
*Respondents.*

(9710-07924; CA A100894)

996 P2d 1025

Jesse Neal Spencer argued the cause and filed the brief for appellant. With him on the brief was Bernardi & Spencer.

Kirkland T. Roberts argued the cause for respondents Floyd Greer and Linda Greer. With him on the brief was Edward Tylicki.

Philip Schradle, Assistant Attorney General, waived appearance for Department of Veterans' Affairs.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, and Brewer, Judges, and Warden, Senior Judge.

WOLLHEIM, J.

Warden, S. J., concurring.

Landau, J., dissenting.

## WOLLHEIM, J.

Plaintiff appeals the trial court's judgment dismissing plaintiff's action on the ground that his complaint failed to state ultimate facts sufficient to constitute a claim under the Uniform Fraudulent Transfer Act (UFTA), ORS 95.230. ORCP 21A(8). Assuming the truth of plaintiff's well-pleaded allegations and facts that might be adduced as proof of such allegations, we consider whether the pleadings are legally sufficient to state a claim. *Brennen v. City of Eugene*, 285 Or 401, 405, 591 P2d 719 (1979). We reverse and remand.

On October 23, 1993, Floyd Greer conveyed by statutory warranty deed all of his interests in residential real property to Linda Greer, his wife. Before that conveyance, the Greers (defendants) had owned the property as tenants by the entirety. The property was also encumbered by a pre-existing note and mortgage in the amount of $35,000. In October 1994, plaintiff's assignor agreed to extend an unsecured line of credit to Floyd, who subsequently defaulted. In May 1997, plaintiff obtained a money judgment against Floyd, which remains unsatisfied. Plaintiff brought this suit, alleging that the 1993 real property conveyance was fraudulent under ORS 95.230.[1]

In order to state a claim under UFTA, plaintiff must plead the occurrence of a conveyance of property that constitutes a "transfer" under the statute. "Transfer" is defined as "every mode * * * of disposing of or parting with an asset or an interest in an asset * * *." ORS 95.200(12). "Asset" is defined, in part, as

"* * * property of a debtor but does not include:

"(a)   Property to the extent that it is encumbered by a valid lien;

---

[1] ORS 95.230 states, in part:

"(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, *whether the creditor's claim arose before or after the transfer was made* or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

"(a) With actual intent to hinder, delay, or defraud any creditor of the debtor * * *." (Emphasis added.)

"* * * * *

"(c)   An interest in property held in tenancy by the entirety to the extent that it is not subject to process by a creditor holding a claim against only one tenant." ORS 95.200(2).

Defendants moved to dismiss the action, arguing that plaintiff's complaint did not allege facts that, if true, would establish that the 1993 conveyance transferred an "asset" under UFTA as defined in ORS 95.200(2)(a) or ORS 95.200(2)(c). Plaintiff did not file a written response to defendants' motion. The trial court received oral argument at a hearing, but neither party requested that the proceeding be recorded. After considering the motion, the pleadings, and the arguments of counsel, the trial court entered an order to dismiss for failure to state a claim based on defendants' two specific arguments. The trial court held that the note and mortgage constituted a "lien" on the whole property and, therefore, the conveyance of the property was not a "transfer" of an "asset." The court also held that, because the property had been held by defendants as tenants by the entirety, plaintiff had no process against the property to collect its money judgment. Therefore, the court reasoned, the conveyance of the property was not a "transfer" of an "asset." On appeal, plaintiff challenges the arguments under both provisions made by defendants and adopted by the trial court.

■       Defendants raise a preliminary challenge to our ability to review plaintiff's assignment of error. Defendants argue that, by failing to file a written response to the motion to dismiss or to record oral arguments, plaintiff has failed to create and designate a record in which it can demonstrate that it preserved its arguments for appeal. In particular, defendants contend that the record does not allow an appellate court to determine whether plaintiff raised the question of whether ORS 95.200(2)(a) applied and the question of whether ORS 95.200(2)(c) applied, much less whether plaintiff raised arguments concerning the proper interpretation of those separate provisions.[2] *See State v. Hitz*, 307 Or 183, 188,

---

[2] Defendants claim that, in fact, plaintiff only made arguments concerning ORS 95.200(2)(c), tenancy by the entirety. Plaintiff does not concede that. For the reasons discussed below, that fact, if true, is not dispositive.

766 P2d 373 (1988). Accordingly, defendants argue that the appeal must be dismissed.

ORAP 5.45 provides that only assignments of error preserved below may be considered on appeal and that the "pertinent portions of the record" must be designated to enable review of those assignments. *See also York v. Bailey,* 159 Or App 341, 346, 976 P2d 1181, *rev den* 329 Or 287 (1999). Plaintiff has done both.

■      First, defendants made a motion to dismiss for failure to state a claim on the very statutory sections at issue on appeal. By appearing at a hearing to oppose the motion, plaintiff raised its objection to that issue and identified *both* of the statutory sources for its objection. *See Hitz,* 307 Or at 188 (noting distinctions between raising an issue at trial, identifying a source for a claimed position, and making particular arguments: "The first ordinarily is essential, the second less so, the third least."). We hold that this is sufficient to preserve the claimed error in this case, viewing the record in light of the purposes of fairness and efficiency that underlie the preservation requirement:

> " '[T]he rules pertaining to preservation of error in trial courts are intended to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument.' " *Northwest Natural Gas Co. v. Chase Gardens, Inc.,* 328 Or 487, 499-500, 982 P2d 1117 (1999) (quoting *Davis v. O'Brien,* 320 Or 729, 737, 891 P2d 1307 (1995)).

The trial court was faced with an issue of statutory interpretation, which is purely a question of law within the province of the court. *See Stull v. Hoke,* 326 Or 72, 77, 948 P2d 722 (1997) (court is responsible for identifying the correct interpretation of a statute). And, importantly, the trial court's decision indicates that it actually considered the statutory provisions argued on appeal. In addition, defendants do not contend that plaintiff's arguments have unfairly surprised them, misled them, or denied them an opportunity to meet an argument. Rather, plaintiff merely seeks review of the same theories advanced by defendants below, considered and adopted by the trial court, and opposed by plaintiff. Denying

review because we lack the exact details of plaintiff's arguments would exalt the form over the substance of the preservation doctrine.

■ Second, we find the record sufficient for review. Again, this is an appeal from a motion to dismiss based on the sufficiency of the complaint in light of a statutory provision. Plaintiff has designated its complaint, which we review on its face for its sufficiency. Statutory interpretation is, again, purely a question of law within the province of the court. *See Stull,* 326 Or at 77. It is not a task that requires a factual record to resolve. *See York,* 159 Or App at 345 (purely legal contentions do not require the establishment of any predicate facts). In addition, the briefs and the record provide us with the benefit of the parties' full exploration of the legal arguments concerning the meaning of the statute. Finally, any factual issues relevant to analyzing the sufficiency of the complaint in light of the proper interpretation of the statute were also designated in the record. Accordingly, we are not hindered from addressing the arguments presented on appeal.

■ We turn to the merits. Plaintiff argues that the subject real property is excluded from being an asset under UFTA only "to the extent" that it is encumbered by a lien and that "to the extent" means to the value of that lien. Thus, according to plaintiff, the value of the equity in the property in excess of the amount of the lien is still an asset. Plaintiff would seek to establish that the equity in the subject property exceeds the value of the note and mortgage encumbering it and that the excess equity is an asset. Defendants respond that the phrase "to the extent" refers to the type of lien on a property, not to the amount. They argue that, because the lien on the residential real property promised the whole property and not a portion or section thereof as available to satisfy the debt, the whole property is encumbered and exempt.

We have touched once before on this issue in *Kellstrom Bros. Painting v. Carriage Works, Inc.,* 117 Or App 276, 844 P2d 221 (1992), *rev den* 317 Or 162 (1993). There, the trial court found that the defendant's property had a fair market value of $83,000 and that the lien on the property exceeded that amount. We explained that, because it was

"undisputed that [the defendant's creditor] held a valid security interest that encumbered *all* of the assets of [the defendant]," those assets were exempt under UFTA. *Id.* at 279 (emphasis added). Thus, we implicitly applied the rationale that the phrase "to the extent" referred to the pecuniary value of the lien and not to the portion of the asset securing a lien.

That application embodies the intent of the legislature. We need only examine the text of the statute to determine that intent. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-11, 859 P2d 1143 (1993). The statute does not define the phrase "to the extent." However, the plain meaning of "extent" can support either plaintiff's or defendants' arguments. We therefore examine the text of the sentence to determine whether the phrase refers to the pecuniary value of the lien or the portion of the property securing the lien.

Defendants' interpretation would render the phrase "to the extent" superfluous. The essence of defendants' argument is that all property that is promised as security for a loan would be subject to a lien; only property not promised as security would not be subject to a lien. Thus, consistent with defendants' interpretation, the legislature could have simply stated that property *"that is* encumbered by a valid lien" is exempt. Including the phrase "to the extent" adds nothing to defendants' interpretation. We are not permitted to omit what has been inserted or insert what has been omitted. ORS 174.010. More importantly, we must, if possible, construe statutes so as to "give effect to all" of its provisions. *Id.* We, therefore, cannot accept defendants' interpretation.

■     We next examine what the legislature did intend by exempting property *"to the extent* it is encumbered by a valid lien." Written in active voice, the sentence would read: a valid lien *encumbers* the property to the extent of the lien. The legislature's choice of a verb can be a significant indicator of the legislature's intention. *See Martin v. City of Albany,* 320 Or 175, 181, 880 P2d 926 (1994). The legislature did not state: to the extent that the property *secures* a valid lien. Property secures, but liens encumber. By its terms, "to the extent" describes the encumbrance, *i.e.,* the lien, not the security, *i.e.,* the property. We, therefore, measure the extent of the lien

encumbering the property, and liens are generally measured by their pecuniary value.

Applying that logic, we interpret ORS 95.200(2)(a) to mean that property that is exempt from being an "asset" under UFTA is the value of its equity that equals or is included in the amount of the valid lien(s) encumbering it; equity in excess of the amount of the encumbering lien(s) is an "asset" under UFTA.[3] The trial court erred in dismissing the action for failure to state a claim on the theory that the mere presence of a lien exempted the entire property pleaded in the complaint from UFTA.

■ We next consider whether the fact that defendants held the subject property as tenants by the entirety before the conveyance exempted the property from being an "asset" as defined by ORS 95.200(2)(c). Plaintiff argues that the text of the definition explains that whether property held in tenancy by the entirety is excluded as an "asset" depends on whether state law permits the interest of a co-tenant in a tenancy by the entirety estate to be subject to collection process. Plaintiff argues further that Oregon case law has established that process may be had against a co-tenant in a tenancy by the entirety estate. Defendants argue that adoption of UFTA shields those properties entirely from creditors, but they do not explain how the text of the statute communicates that meaning. Nor do they explain how adoption of UFTA or other precedents altered the common-law rule in Oregon that process may be had against a co-tenant in a tenancy by the entirety estate. They argue only that shielding such estates from creditors is sound policy.

---

[3] Other jurisdictions implementing versions of the model UFTA have given the same interpretation to similar language. *See In re McFarland,* 170 BR 613, 623 (Bankr SD Ohio 1994) (under Ohio UFTA, considering equity value in excess of the amount of existing valid liens as an asset); *Baker & Sons Equip Co. v. GSO Equip. Leasing,* Inc., 87 Ohio App 3d 644, 652, 622 NE2d 1113 (1993) (under Ohio UFTA, property holding a fair market value less than the amount of valid liens encumbering it was "fully encumbered" and not an "asset"); *Rich v. Rich,* 185 W Va 148, 151, 405 SE2d 858 (1991) (under West Virginia UFTA, if property contains equity in excess of the liens encumbering it, then the excess equity is an "asset"). *See also Intili v. DiGiorgio,* 300 NJ Super 652, 657-58, 693 A2d 573 (1997) (the New Jersey UFTA was designed to align state law on fraudulent transfers with the federal Bankruptcy Act and Uniform Commercial Code, and creditors are empowered under UFTA to avoid the transfer of assets "to the extent necessary to satisfy the debt").

■ The text of the statute is clear regarding that question: a property interest held in tenancy by the entirety is exempt as an asset "to the extent that it is *not* subject to process by a creditor holding a claim against only one tenant." ORS 95.200(2)(c) (emphasis added). Thus, the co-tenant's interests in those estates are an asset to the extent that they *are* subject to process by a creditor. That issue was settled by the Oregon Supreme Court in 1927:

> "We * * * believe that public policy prevents a debtor from avoiding payment of his just debts by holding his land by the entirety. It can easily be imagined that a dishonest debtor could thus defeat collection of his financial obligations though he owned valuable real property producing an income sufficient to allow him to live in luxury." *Ganoe v. Ohmart,* 121 Or 116, 126, 254 P 203 (1927).

"[T]he title held by tenants by the entirety is a single title representing the whole interest in the land and * * * is vested in each tenant subject to defeasance by his death prior to that of his cotenant." *Brownley v. Lincoln County,* 218 Or 7, 10, 343 P2d 529 (1959). Thus, in Oregon, "each spouse has the power to convey or encumber the whole title subject to the right of survivorship in the other spouse"; however, each spouse is also "regarded as the separate owner of one half the rents and profits." *Id.* at 11. The result then is that

> "[t]he sale on execution of the interest of the husband would not destroy or affect the right of survivorship in the wife. The wife's interest would not be touched. The purchaser at such sale would procure one half of the usufruct of the property." *Ganoe*, 121 Or at 126-27.

Indeed, during marriage, a purchaser is entitled only to the individual spouse's share of the rents and profits. *Brownley,* 218 Or at 11. *See also Hoyt v. American Traders, Inc.,* 301 Or 599, 601 n 1, 725 P2d 336 (1986); *Wilde v. Mounts,* 95 Or App 522, 525, 769 P2d 802 (1989).

Therefore, because in Oregon some interests of a co-tenant in a tenancy by the entirety estate are subject to collection process, the subject property is not excluded from being an "asset" under ORS 95.200(2)(c). The trial court erred in dismissing the action for failure to state a claim because

Floyd held the property pleaded in the complaint as a tenant by the entirety before the conveyance.[4]

Reversed and remanded.

**WARDEN, S. J.,** concurring.

The dissent sees a preservation issue in this case where there is none.

When defendants moved to dismiss for failure of the complaint to state ultimate facts sufficient to constitute a claim, *i.e.*, demurred to the complaint, the issue was joined and the record was complete. Plaintiff was not required by ORCP 21 to file any response (although UTCR 5.030 appears to allow one) or to appear for argument. The issue is only the sufficiency of the complaint; no argument, no evidence is necessary. The trial judge simply erred in ruling on that question. The majority's, analysis is correct, and I concur.

Edmonds and Linder, JJ., join in this concurrence.

**LANDAU, J.,** dissenting.

ORAP 5.45(2) provides that "[n]o matter assigned as error will be considered on appeal unless it was preserved in the lower court." In this case, plaintiff did absolutely nothing to preserve the contentions it now asserts on appeal. The majority nevertheless holds that plaintiff's contentions were preserved. The majority errs in so holding and, in the process, significantly muddies the already murky waters of our preservation case law. *See State v. Doern*, 156 Or App 566, 576-81, 967 P2d 1230 (1998), *rev den* 328 Or 666 (1999) (Landau, J., dissenting).

The record consists solely of the trial court pleading file. That file reflects that defendants moved to dismiss plaintiff's complaint. Plaintiff did not file any response to the motion. Plaintiff did show up for oral argument on the motion, but the proceedings were not recorded, so we cannot tell what was or was not said. (Plaintiff now says that, at oral argument, it did assert the arguments it now advances on

---

[4] Again, our review is limited only to whether plaintiff's complaint states a claim for relief. We state no opinion regarding the merits of plaintiff's claim.

appeal. Defendants, however, insist that plaintiff said nothing of the kind.) That is the entirety of the record as to plaintiff's contentions before the trial court. In other words, so far as the record reflects to us, plaintiff said nothing in response to the motion to dismiss.

The majority holds that saying nothing in response to a motion to dismiss is not a problem. The majority advances four reasons for that rather surprising assertion, none of which I find persuasive.

First, the majority states that "[b]y appearing at a hearing to oppose the motion, plaintiff raised its objection [to defendants' motion] and identified *both* of the statutory sources for its objections." 165 Or App at 742 (emphasis in original). With respect, the majority's reading of the record is fanciful. All we know from the record is that plaintiff appeared at the hearing. That plaintiff said anything, much less that it identified the precise sources for its objections on appeal is sheer conjecture. In point of fact, defendants have asserted to this court that plaintiff did *not* identify the statutory sources for its arguments on appeal. Plaintiff contests defendants' recollection of what transpired at the hearing. But without a record, we cannot tell who is recalling events correctly. The majority does not explain—and I do not understand—how we can resolve that factual dispute without a record. It seems to me that one of the purposes of preservation is to prevent the court from being put in precisely this position, that is, of having to speculate whether the parties and the trial court were given a fair opportunity to address the concerns that are being raised on appeal.

Second, the majority observes that the issue in contest involves merely a matter of statutory construction and that, under *Stull v. Hoke*, 326 Or 72, 948 P2d 722 (1997), requiring more of plaintiff than the mere fact of his appearance at a hearing "would exalt the form over the substance of the preservation doctrine." The majority, however, stretches the court's holding in *Stull* well beyond what a fair reading of the case will support. At issue in *Stull* was whether the court can be required to choose between competing *incorrect* constructions of a statute. The court held that it cannot; that is to say, the court cannot be limited to merely choosing between

multiple incorrect constructions of a statute. *Stull*, 326 Or at 77; *see also State v. Williams*, 161 Or App 111, 116, 984 P2d 312 (1999) (citing *Stull* for the rule that we are not bound by parties' interpretations of statutes, because "if we accept the parties' formulation of the issues presented we would be forced to misinterpret a statute"). That is not the problem in this case. The problem in this case is *whether* to construe a statute at all. It is not that the appealing party made a bad argument below, but that the appealing party apparently made no argument at all.

Moreover, in my view it is the majority that is forgetting the practical underpinnings of the preservation rule. Among the principal justifications of that rule is providing the trial court with a fair opportunity to make the correct decision. *See, e.g., Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995) ("rules pertaining to preservation of error in trial courts are intended to advance goals such as ensuring that the positions of the parties are presented clearly to the initial tribunal"); *State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990) (rationales for preservation rule include ensuring that trial court had an opportunity "to understand and correct any error"); *State v. Cruz-Aguirre*, 158 Or App 15, 18, 972 P2d 1206 (1999) ("The purpose underlying ORAP 5.45(2) is that the preservation of an issue permits a trial court to understand and correct any error and to avoid the necessity of appeal."). In this case, the trial court had no such opportunity. Indeed, for all we know, had plaintiff actually made the arguments to the trial court that it now makes to this court, the trial court could well have understood the error of defendants' position and avoided the ruling that the majority now reverses. Preservation is supposed to avoid that possibility.

Third, the majority observes that the "trial court's decisions indicates that it actually considered the statutory provisions argued on appeal." 165 Or App at 742. In making that observation, however, the majority again demonstrates that it has missed one of the key policies of preservation. The fact that the trial court heard *defendants'* arguments about the meaning of the statute hardly means that the trial court was aware of the *plaintiff's* arguments. And it is the trial court's awareness of *plaintiff's* arguments that establishes whether those arguments were preserved. In this case, the

record reflects absolutely nothing about the nature of plaintiff's arguments, indeed, whether it made any at all. The majority's observation about the trial court's awareness of the statute makes no sense.

Finally, the majority points out that the record is sufficient for review. 165 Or App at 743. The majority never explains what that has to do with plaintiff's failure to preserve its claim of error. The fact that an appellant designates a record sufficient to demonstrate reversible error does not mean that appellant also has demonstrated that the claim of error was preserved. Again, the majority ignores the point of preservation that, however complete the record of error, the trial court must have been given a fair opportunity to avoid making it.

Aside from the fact that the majority's opinion offers no persuasive justification for addressing plaintiff's contentions, I am troubled by its implications for future cases. Just how far does the majority's reasoning extend? The majority holds that the mere fact that plaintiff appeared at a hearing on defendants' motion suggests that plaintiff opposed it and that such opposition suffices when the sole issue is one of law. 165 Or App at 742-43. I foresee much future mischief in such a holding. Indeed, if the majority's holding is correct, then much current preservation law is not. We have held, for example, that doing more than merely showing up at a hearing—even mentioning a specific source of authority to the trial court—may be insufficient to preserve a claim of error if what the appealing party did below was not sufficient to fairly apprise the trial court of the nature of its error. *See, e.g., State v. Riggs*, 143 Or App 427, 431, 923 P2d 683 (1996), *rev den* 325 Or 247 (1997) (citing Article I, section 12, of Oregon Constitution, not sufficient to preserve state double jeopardy claim).

I would hold that plaintiff failed to preserve its claim of error in this case. The record provides no basis for concluding that any of the arguments it asserts on appeal were made to the trial court. I would affirm on that basis and would not address the merits of the sufficiency of the complaint. I therefore respectfully dissent from the majority's decision to the contrary.

Deits, C. J., joins in this dissent.