Argued and submitted November 15, 2004, reversed and remanded for reconsideration May 25, petition for review denied October 4, 2005 (339 Or 406)

In the Matter of the Compensation of
Kevin E. Dedera, Claimant.

Kevin E. DEDERA,
*Petitioner,*

*v.*

RAYTHEON ENGINEERS & CONSTRS
and Liberty Northwest Insurance Corporation,
*Respondents.*

01-04189; A121977

112 P3d 1198

Michael Gilbertson argued the cause for petitioner. On the brief was R. Adian Martin.

Deborah L. Sather argued the cause for respondents. With her on the brief were Leigh A. Hudson and Sather, Byerly & Holloway.

Before Haselton, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Claimant seeks review of a Workers' Compensation Board (board) order denying claimant temporary disability benefits. He contends that the board erred in construing ORS 656.262(4)(g) to invalidate his attending physician's authorization of temporary disability once another physician assumed the role of attending physician. We review for errors of law. ORS 183.482(8). Because the board's interpretation of ORS 656.262(4)(g) was in error, we reverse.[1]

The pertinent facts are undisputed. Claimant sustained a compensable low-back injury in November of 1997 while working for employer as a carpenter. The claim for that condition was closed in May of 1998 and ultimately claimant received an award of five percent unscheduled permanent disability.

On February 26, 1999, claimant sought treatment from Dr. Zirkle, an orthopedic surgeon, for constant pain in his low back and for pain and numbness in his left leg. Zirkle diagnosed nerve root irritation from a probable disc herniation, prescribed medication, and recommended that claimant see a neurosurgeon. Claimant returned to Zirkle in August of that year, reporting that he had been "shopping around from doctor to doctor" but had been unable to see a neurosurgeon because his claim was closed. Zirkle again examined claimant and determined that he should be considered for surgical intervention. On August 18, 1999, in order to help claimant get his claim reopened, Zirkle filled out a "Notice of Claim for Aggravation" authorizing "time loss" (that is, temporary disability) from "2-26-99—present."[2]

Zirkle then referred claimant to Dr. Cindrich, a neurosurgeon, who saw claimant on August 31, 1999. Cindrich ordered an EMG and, on review of that, an MRI. He made no attempt to authorize temporary disability on seeing

---

[1] Because of this disposition, we do not reach claimant's alternative assignment of error.

[2] Zirkle later confirmed that his authorization of temporary disability to the "present" was intended to apply prospectively into the future until the condition was treated, rather than merely to the day of his authorization.

claimant and, indeed, nothing in the record appears to have triggered a need to do so at that point.

On September 1, 1999, the insurer wrote to Zirkle requesting confirmation that he was claimant's current attending physician. A member of Zirkle's staff wrote back that he was not claimant's attending physician.

The insurer began paying interim compensation on September 2, 1999. Those payments ended as of November 15, 1999, when the insurer issued an aggravation denial, and claimant requested a hearing. Then, in February of 2000, claimant requested that the insurer accept the "new condition" of "L4 radiculopathy secondary to L3-4 disc herniation." Although the insurer partially denied that claim as well, the board set aside the denial in March of 2001. Insurer then accepted claimant's new condition but did not pay any additional temporary disability on reopening the claim, stating that there was no express authorization for such benefits as of September 1, 1999, when Zirkle's office had indicated that he was not claimant's attending physician. On May 1, 2001, claimant saw Cindrich again, and Cindrich retroactively authorized temporary disability from September 1, 1999, forward, indicating that claimant was "totally incapacitated." Because ORS 656.262(4)(g) allows an attending physician to retroactively authorize temporary disability only back to 14 days before the date of authorization, insurer paid benefits only from April 17, 2001 forward.

Claimant requested a hearing, seeking an award of temporary disability from August 4, 1999 (14 days before Zirkle's original authorization) to April 17, 2001 (the date the insurer commenced disability payments). An administrative law judge denied claimant compensation for that period, finding that no attending physician had properly authorized time loss for that period.

On appeal, the board found that Zirkle was claimant's attending physician at the time he authorized time loss.[3] Accordingly, the board found that claimant was entitled

---

[3] ORS 656.005(12)(b) defines an "attending physician" as "a doctor or physician who is primarily responsible for the treatment of a worker's compensable injury * * *[.]"

to benefits for the period from August 4, 1999 to August 31, 1999, but otherwise upheld the denial of benefits. The board concluded that Zirkle qualified as an attending physician at the time he authorized time loss and that his authorization was prospective and open-ended in nature, thereby authorizing benefits beyond the August 18, 1999, authorization date. However, the board found that Zirkle ceased being claimant's attending physician on August 31, 1999, when Cindrich took over claimant's treatment. Accordingly, the board reasoned, temporary disability was "not authorized by the attending physician" within the meaning of ORS 656.262(4)(g) for any period after August 31, 1999.

Claimant argued on reconsideration that the board had deviated from its prior holding in *Debra D. Osler*, 53 Van Natta 343 (2001). In *Osler*, the claimant's attending physician authorized temporary disability and withdrew as claimant's attending physician in the same chart note. *Id.* at 343. The employer contended that, because the physician withdrew as the attending physician, the physician's authorization of temporary disability expired on that date. *Id.* The board disagreed, explaining that "[a] claimant is entitled to temporary disability for those periods of time for which there is authorization from an attending physician" under ORS 656.262(4)(a) and (g) and that "resignation of the attending physician is not one of the events enumerated in ORS 656.268(4)" that terminates temporary disability by operation of law. *Id.* at 344.

In its order on reconsideration, the board distinguished *Osler*, noting that there the claimant had not obtained a new attending physician after the first one withdrew. Here, the board reasoned, claimant's acquisition of a new attending physician (Cindrich) rendered ineffective Zirkle's time-loss authorization. Accordingly, once Cindrich assumed the role of attending physician on August 31, 1999, only he could authorize temporary disability. Because Cindrich gave no such authorization until May 1, 2001, the board held that temporary disability was lawfully denied from September 1, 1999 to April 17, 2001 (14 days before issuance of that authorization).

Claimant seeks review, arguing that Zirkle's time-loss authorization did not automatically expire when Cindrich became his attending physician. ORS 656.268(4) provides that temporary total disability expires by operation of law when the worker returns to regular or modified employment, when the attending physician advises the worker and documents in writing that the worker is released to return to regular or modified employment (with additional exceptions not relevant here), and when "[a]ny other event [occurs] that causes temporary disability benefits to be lawfully suspended, withheld or terminated under ORS 656.262(4) or other provisions of this chapter." The board relied on ORS 656.262(4)(g) to support its view that benefits may be terminated when a claimant changes attending physicians. We disagree with that interpretation.

ORS 656.262(4)(g) provides, in part, as follows:

> "Temporary disability compensation is not due and payable pursuant to ORS 656.268 after the worker's attending physician * * * ceases to authorize temporary disability or for any period of time not authorized by the attending physician * * *."

Accordingly, in determining whether Zirkle's time-loss authorization expired when claimant changed attending physicians, we must determine (1) whether claimant's attending physician "cease[d] to authorize temporary disability" or (2) whether the time period of temporary disability at issue was "not authorized by the attending physician."

The first level of statutory analysis we must undertake under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993), is to discern the legislature's intent from the plain meaning of the statutory text in context. If the legislature's intent is clear from the text and context, further inquiry is unnecessary. *Id.* at 611. In interpreting the statute, we will neither insert what has been omitted by the legislature nor omit what the legislature has inserted. *Id.* (citing ORS 174.010).

We begin with the question of whether claimant's attending physician "cease[d] to authorize temporary disability." As commonly understood, to "cease" means "to put a stop

to" or "halt." *Webster's Third New Int'l Dictionary* 358 (unabridged ed 2002). The legislature's choice of the verb "cease," used in the active voice, indicates an intention to require the attending physician to take an affirmative step to "put a stop to" or "halt" any prior authorization of temporary disability. *See Oregon Account Systems, Inc. v. Greer*, 165 Or App 738, 744, 996 P2d 1025 (2000) ("The legislature's choice of a verb can be a significant indicator of the legislature's intention."). Simply withdrawing as the attending physician does not constitute such a step. To cease performing the functions of an attending physician is not equivalent to putting a stop to or halting time loss authorization; the board recognized as much in *Osler*, 53 Van Natta at 344, where it held that authorization for temporary disability continued beyond the attending physician's withdrawal. Here, there is no indication that Zirkle or Cindrich took any steps to put a stop to or halt claimant's time-loss authorization during the period that each served as claimant's attending physician.

We turn to the question of whether the "period of time" at issue was "not authorized by the attending physician" under ORS 656.262(4)(g). There is substantial evidence to support the board's findings (not challenged here) that Zirkle's time-loss authorization was open-ended and that he was claimant's attending physician at the time he made that authorization. Cindrich assumed the role of attending physician while Zirkle's authorization was still in effect. The question, then, is whether the legislature, by requiring that the time period of temporary disability be authorized by "the attending physician," intended to require that a physician be the claimant's attending physician not only at the time of the authorization but also at the time that benefits are paid. The text of ORS 656.262(4)(g) imposes no such requirement, and we are forbidden, both by statutory command and by constitutional principles, to insert language that the legislature, by design or by default, has omitted. ORS 174.010; *Deluxe Cabinet Works v. Messmer*, 140 Or App 548, 553, 915 P2d 1053, *rev den*, 324 Or 305 (1996).

In sum, Zirkle was the attending physician at the time that he authorized temporary disability for claimant, and he granted an open-ended authorization. He did not "cease" that authorization when Cindrich became claimant's

attending physician[4] (*i.e.*, the "doctor or physician who is primarily responsible for the treatment of a worker's compensable injury[,]" ORS 656.005(12)(b)), nor did claimant seek temporary disability benefits for "any period of time not authorized by the attending physician." Accordingly, ORS 656.262(4)(g) does not provide that an attending physician's authorization of temporary disability expires when another physician assumes that role, and the board erred in concluding otherwise.

Reversed and remanded for reconsideration.

---

[4] Practically speaking, nothing about Cindrich's assumption of that role triggered the need for a new time-loss authorization, and the insurer did not request additional authorization.